**Chester L. BUTTS, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 91–1688.**

United States Court of Veterans Appeals.

Sept. 16, 1993.

Chester L. Butts, pro se.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and Richard Mayerick, Washington, DC, were on the pleadings for appellee.

Before NEBEKER, Chief Judge, KRAMER *, FARLEY, MANKIN, HOLDAWAY, IVERS, and STEINBERG, Judges.

IVERS, Judge, filed the opinion of the Court. STEINBERG, Judge, filed a concurring opinion.

IVERS, Judge:

Chester L. Butts appeals a July 11, 1991, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for (1) defective hearing in the left ear, (2) residuals of an injury to the right index finger, (3) pseudofolliculitis barbae, and (4) a bilateral foot disorder; and denying entitlement to an increased (compensable) rating for (1) a perianal abscess with periurethral extension, (2) recurrent lumbosacral strain, and (3) chronic vasomotor rhinitis with tinnitus. *Chester L. Butts*, BVA 91–21122 (July 11, 1991). The Secretary of Veterans Affairs (Secretary) has filed a motion for summary affirmance. The Court has jurisdiction of the case pursuant to 38 U.S.C.A. § 7252(a) (West 1991). For the reasons set forth below, the Court affirms in part and vacates in part the decision of the BVA and remands the matter for readjudication consistent with this opinion.

## I. Factual Background

Appellant served in the United States Air Force from May 17, 1971, to March 2, 1978 (R. at 1–2), and from December 4, 1981, to July 17, 1985 (R. at 3). An August 9, 1985, Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) rating decision granted service connection for a perianal abscess with periurethral extension (rated as 0% disabling), but denied service connection for status post hemorrhoidectomy. *See* R. at 49. On February 10, 1988, appellant applied to the RO for service connection for a deviated nasal septum, a lumbosacral strain, rhinitis,

---

* Judge Kramer recused himself from all proceedings in this case.

sinusitis, hearing loss of the left ear, tinnitus, residuals of a cut on the right index finger, bilateral foot problems, and a facial rash; he also sought an increased (compensable) disability rating for the perianal abscess and sought to reopen a claim for service connection for status post hemorrhoidectomy. *See* R. at 43. He also sought the assignment of a disability rating under 38 C.F.R. § 3.324 (1988). *See* R. at 49. On May 10, 1988, the RO granted service connection for a deviated nasal septum (rated as 0% disabling), recurrent lumbosacral strain (rated as 0% disabling), and chronic vasomotor rhinitis (rated as 0% disabling). R. at 44. Additionally, the RO denied service connection for the other conditions, denied an increased disability rating for the perianal abscess condition, and did not reopen the claim for service connection for status post hemorrhoidectomy. *Ibid.* On December 6, 1988, appellant, through his service representative, filed a Notice of Disagreement. R. at 47. Following a February 21, 1989, personal hearing, the RO hearing officer granted service connection for tinnitus (rated as 0% disabling) and for status post hemorrhoidectomy (rated as 0% disabling). R. at 69. On January 18, 1990, the BVA remanded the matter to the RO for verification of appellant's dates of active service. R. at 75. After the requested development had been completed, the RO issued a rating decision on October 31, 1990, granting an increased rating for the deviated nasal septum due to trauma (now rated as 10% disabling) and continuing the noncompensable disability rating for status post hemorrhoidectomy; the rating decision also coded tinnitus as a complication of rhinitis under the diagnostic code (DC) for rhinitis and continued the 0% disability rating for tinnitus. R. at 96–97. In its July 1991 decision, the Board denied service connection for (1) defective hearing of the left ear, (2) residuals of an injury to the right index finger, (3) pseudofolliculitis barbae, and (4) a bilateral foot disorder; and denied an increased (compensable) disability rating for (1) a perianal abscess with periurethral extension, (2) recurrent lumbosacral strain, and (3) chronic vasomotor rhinitis with tinnitus. *Butts,*

BVA 91–21122, at 10–11. The Board also stated that the claim for an increased rating for a deviated nasal septum was no longer at issue because appellant had not voiced disagreement with the October 1990 increase in the rating. *Id.* at 3. In addition, the Board stated that the claim for consideration under 38 C.F.R. § 3.324 was moot because "consideration of such benefits is predicated on the existence solely of *noncompensable* service-connected disabilities." *Butts,* BVA 91–21122, at 3 (underlining in original).

The Court notes initially that appellant has not appealed the RO determinations regarding the claims for status post hemorrhoidectomy or the deviated nasal septum. *See* 38 C.F.R. § 20.200 (1992) ("If the Statement of the Case [SOC] and any prior Supplemental [SOCs] addressed several issues, the Substantive Appeal must either indicate that the appeal is being perfected as to all of those issues or must specifically identify the issues appealed.") Therefore, neither of these claims was before the Board; nor are they currently before the Court.

## II. Appellant's Claims

■ The Court reviews the Board's findings of fact regarding new claims under a "clearly erroneous" standard of review. 38 U.S.C.A. § 7261(a)(4) (West 1991); *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990); *see also Proscelle v. Derwinski,* 2 Vet.App. 629, 631–32 (1992) (claim for increase is new claim). Under the "clearly erroneous" standard of review, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, [the Court] cannot overturn them." *Gilbert, supra.* The Board must base its decisions on "all evidence and material of record," 38 U.S.C.A. § 7104(a) (West 1991), and must provide a "written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record," 38 U.S.C.A. § 7104(d)(1) (West 1991). *See Douglas v. Derwinski,* 2 Vet.App. 435, 438–39 (1992)

(en banc); *Gilbert*, 1 Vet.App. at 56–57. Pursuant to these statutory requirements, the Board must "account for the evidence which it finds to be persuasive or unpersuasive," and provide reasons or bases for rejecting evidence submitted by or on behalf of the claimant. *Gilbert*, 1 Vet.App. at 57.

### A. Claims for Service Connection

■ The Court holds that the Board did not discuss all of the evidence of record concerning defective hearing of the left ear. The Board discussed the diagnosis of mild high frequency hearing loss appearing on appellant's January 1985 discharge examination. R. at 13. The Board then pointed to an April 1988 audiological evaluation indicating "[e]ssentially normal hearing bilaterally" (R. at 35) and to a September 1990 audiological evaluation stating that "[s]peech results do suggest that patient's hearing in the [left ear] is adequate for normal conversational speech" (R. at 90). However, the Board did not discuss the statement appearing in the September 1990 evaluation that the "test results for the [left ear] were incomplete and are inconclusive in view of patient's lack of cooperating and his attending behaviors." *Ibid.* Moreover, the Board failed to discuss a VA physician's (Dr. Lockey) statement on the same day as the September 1990 audiological evaluation that "[o]n gross examination the patient does appear to have a mild high frequency neurosensory hearing loss." R. at 92. The Court thus remands the claim for service connection for defective hearing in the left ear. ·

■ Regarding residuals of an injury to the right index finger, the Board's decision denying service connection has a plausible basis. On an April 1988 VA clinical record, a VA physician wrote: "Right index finger has full range of motion, no apparent sensory or motor pattern and we can't identify a laceration scar." R. at 32. Therefore, the Court affirms the Board's July 1991 denial of service connection.

■ The Board's denial of service connection for pseudofolliculitis barbae also has a plausible basis. (Pseudofolliculitis barbae is a bacterial disorder occurring chiefly in the beard. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1378 (27th ed. 1988).) Service medical records from June 1977 indicate an impression of folliculitis on appellant's face. R. at 11. However, appellant's January 1985 discharge examination indicated that he was found to be normal on an examination of his head, face, neck, and scalp. R. at 13. Thereafter, pseudofolliculitis barbae did not reappear on appellant's medical records until a reference to the condition on a 1988 VA prescription form. R. at 25. Therefore, the Board's finding that this condition was acute and transitory has a plausible basis in the record, and the Court affirms the Board's denial of service connection. *See* 38 C.F.R. § 3.303(b) (1992) (where fact of chronicity in service is not adequately supported, showing of chronicity after discharge is required to support claim for service connection).

■ The Board's denial of service connection for a bilateral foot disorder is also not clearly erroneous. On an April 21, 1988, VA orthopedic examination for compensation and pension purposes, a VA physician did not find a foot disorder. R. at 32. The pertinent clinical record indicated:

He thinks he might limp some with the right side, refers to the thigh but can't describe a specific cause. He does place his feet rather gingerly but can walk on his toes and heels. He stands without a list or tilt, flexes 85, extends 15, bends 40 without significant segmentation, rotates 40 and has a two inch chest expansion. His feet are cool but pulses are palpable, no sensory or motor pattern.

R. at 31–32. In addition, an April 21, 1988, VA radiologic report regarding both feet indicated: "No gross osseous or joint or soft tissue abnormalities." R. at 24. Therefore, the Court affirms the Board's July 1991 decision on this claim.

### B. Claims for Increased Disability Ratings

■ As for the claim for increase in a noncompensable service-connected perianal

abscess with periurethral extension, the Board did not discuss all the evidence of record. Appellant's condition is rated under DC 7899–7819. R. at 44; see generally 38 C.F.R. §§ 4.20 (analogous ratings for unlisted conditions), 4.27 (diagnostic codes for unlisted conditions) (1992); Lendenmann v. Principi, 3 Vet.App. 345, 349–51 (1992); Pernorio v. Derwinski, 2 Vet.App. 625, 629 (1992). Under the rating for new, benign skin growths, 38 C.F.R. § 4.118, DC 7819 (1992), "slight, if any, exfoliation, exudation or itching, if on a nonexposed surface or small area," warrants a 0% rating. "[E]xfoliation, exudation or itching, if involving an exposed surface or extensive area," warrants a 10% rating. Ibid. In its decision, the BVA referred to a March 1988 VA examination and to a September 1990 VA surgical examination and stated: "Inasmuch as the veteran's perianal abscess is, at present, essentially asymptomatic, the Board is of the opinion that the noncompensable evaluation presently in effect is appropriate, and that an increased rating is not warranted." Butts, BVA 91–21122, at 7–8. However, the Board did not discuss the significance of a July 2, 1988, medical certificate prescribing sitz baths for the perianal abscess or a July 6, 1988, notation appearing on VA progress notes that the perianal wound was "healing well" with "no residual fluctuance." R. at 45–46. (A sitz bath is used especially "in postoperative cases in which the hips and thighs are immersed in hot water for the therapeutic effect of moist heat in the perineal and anal regions." WEBSTER'S MEDICAL DESK DICTIONARY 656 (1986) [hereinafter WEBSTER'S].) Nor did the Board discuss or analyze appellant's testimony at a February 1989 personal hearing that his perianal abscess "inflates" constantly, that he takes either a shower or a sitz bath, and that he has been given a "donut" for the condition. R. at 61. On remand, the Board must address all the evidence and provide reasons or bases for its findings.

■ The Board's denial of an increase in appellant's currently noncompensable service-connected lumbosacral strain condition is not clearly erroneous. Under 38 C.F.R. § 4.71a, DC 5295 (1992), a lumbosacral strain "[w]ith slight subjective symptoms only" warrants a noncompensable disability rating, and a strain "[w]ith characteristic pain on motion" warrants a 10% disability rating. An April 21, 1988, VA radiologic report regarding the lumbosacral spine indicated: "The height of intervertebral disc spaces and vertebral bodies is unremarkable. The pedicles and transverse processes are intact." R. at 24. A VA clinical record prepared on the same day in conjunction with a VA orthopedic examination noted:

There is tenderness in the lumbar region without radiating pain and no sciatic notch tenderness.... He states that bending his back and lifting things hurt but that the observed test didn't really hurt much.... History of back strain and recurrent back discomfort with prolonged sitting and lifting but no neurological pattern.

R. at 32. Therefore, the Board's finding that the degree of disability did not warrant a compensable rating has a plausible basis, and the Court affirms the July 1991 BVA decision regarding this claim.

■ Regarding an increased (compensable) rating for rhinitis, the Board's decision is not clearly erroneous. (Rhinitis is an "inflammation of the mucous membrane of the nose." WEBSTER'S at 620.) Under 38 C.F.R. § 4.97, DC 6501 (1992), chronic atrophic rhinitis exhibiting "definite atrophy of intranasal structure, and moderate secretion" warrants a 10% disability rating. Appellant's rhinitis is currently rated as 0% disabling. R. at 97. On a September 1990 VA examination report, a physician wrote: "This patient has severe obstruction of the nasal cavities secondary to a nasal septal deformity which appears to be post-traumatic in nature." R. at 92. There is no evidence in the record of secretion. Therefore, the Board's denial of an increase has a plausible basis, and the Court affirms the Board's decision on this issue.

### III. Selection of a Diagnostic Code

Regarding appellant's tinnitus, the Board rated that condition under the diagnostic code for rhinitis. On May 10, 1988, the RO

had considered tinnitus on a separate basis under 38 C.F.R. § 4.87a, DC 6260 (1992). R. at 44. Under DC 6260, tinnitus that is "[p]ersistent as a symptom of head injury, concussion or acoustic trauma" warrants a 10% disability rating. After the February 1989 personal hearing, the RO described tinnitus as being "due to rhinitis" while continuing to rate the condition under DC 6260. R. at 69. However, in a November 6, 1990, rating decision, the RO began rating tinnitus as a complication of rhinitis, under DC 6501. R. at 97. In *Pernorio,* the Court stated:

> [W]hen the regulations do not provide diagnostic codes for specific disorders, it is necessary for the VA to evaluate those conditions under codes for similar disorders or codes that provide a general description that may encompass many ailments. However, in such cases, the Board should explain in its decision the diagnostic code under which the claim is evaluated, and, *most importantly, explain any inconsistencies, apparent or real, that result when the Board cites a code different from that used by the VA at other times in the history of the adjudication of the claim,* including codes used by the agency of original jurisdiction or cited in the [SOC].

2 Vet.App. at 629 (emphasis added). In this case, the BVA evaluated appellant's rhinitis under a different code without providing reasons or bases for its decision to change codes in midstream.

In previous cases, the Court has stated that "[a] determination of whether the appropriate [DC] was selected is a question of law" which the Court reviews on a de novo basis and which the Court may set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Horowitz v. Brown,* 5 Vet.App. 217, 224 (1993) (quoting 38 U.S.C.A. § 7261(a)(3)(A) (West 1991)); *McGrath v. Brown,* 5 Vet.App. 57, 59 (1993); *see also Young v. Brown,* 4 Vet.App. 106, 108 (1993); *Smith v. Derwinski,* 1 Vet.App. 178, 180 (1991).

However, upon further consideration, we have concluded that the Court must recast the standard for reviewing such DC selections. The selection of the proper DC is not a question of law because it is a determination that is completely dependent upon the facts of a particular case. It involves the application of the law—in this case a regulation—to a specific set of facts—in this case a particular condition affecting a claimant. In the context of reviewing an agency's application of the law to the facts, courts have looked

> to (a) the nature of the question to be decided, and (b) a comparison of the respective qualifications and competence of the decisionmakers at issue. [Citation omitted.] Where the question to be decided involves matters of particular expertise of the agency, the deferential standard should be applied. [Citation omitted.] But judicial deference is not warranted where courts have experience in the area and are fully competent to decide the issue. [Citation omitted.] In those situations, the more probing de novo standard is appropriate.

*Morris v. C.F.T.C.,* 980 F.2d 1289, 1293 (9th Cir.1992); *see also N.L.R.B. v. Hearst Publications,* 322 U.S. 111, 131, 64 S.Ct. 851, 860–61, 88 L.Ed. 1170 (1944) (where question involves specific application of broad statutory term in proceeding where the agency administering the statute must determine the application initially, "the reviewing court's function is limited"); *Washington Urban League v. F.E.R.C.,* 886 F.2d 1381, 1386 (3rd Cir.1989) ("the case for deference [by a court to an agency] is particularly strong when the agency has interpreted regulatory terms regarding which it must often apply its expertise"); *cf. F.T.C. v. Indiana Federation of Dentists,* 476 U.S. 447, 454, 106 S.Ct. 2009, 2016, 90 L.Ed.2d 445 (1986) (identification of governing legal standards and their application to the facts found are for the courts to resolve, "although in considering such issues the courts are to give some deference to [the agency's] informed judgment that a particular commercial practice is deemed to be 'unfair' " under the Federal Trade Commission Act, 15 U.S.C.A. § 45).

The Court notes that the Congress delegated to the Secretary in the first and final instance the authority to adopt a schedule for rating disabilities. 38 U.S.C.A. § 1155 (West 1991). Pursuant to that authority, the Secretary has issued a regulation describing the nature of the process of applying the rating schedule to individual circumstances. Under 38 C.F.R. § 4.21 (1992), "Findings sufficiently characteristic *to identify the disease and the disability* therefrom, and above all, coordination of rating with impairment of function will ... be expected in all instances." (Emphasis added.) As this statute and regulation recognize, VA and the BVA possess specialized expertise in identifying and assessing the medical nature of a claimed condition, and their application of a particular DC to a particular condition is due greater deference.

We now hold that the Court may set aside the BVA's selection of a DC in a particular case only if such selection is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C.A. § 7261(a)(3)(A); *see Marlow v. Brown*, 5 Vet.App. 146, 149 (1993) (Court review of BVA decision on a "clear and unmistakable error" claim is subject to the "arbitrary, capricious" standard); *Russell v. Principi*, 3 Vet.App. 310, 315 (1992) (en banc) (same); *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (stating that the scope of review under the "arbitrary and capricious" standard is narrow, but that the agency must nevertheless "examine the relevant data and articulate a satisfactory explanation for its action"); *Environmental Defense Fund v. Costle*, 657 F.2d 275, 283 (D.C.Cir.1981) (arbitrary and capricious standard is very narrow, mandating judicial affirmance if a rational basis exists for an agency decision even if the court may disagree); *Hunt v. Derwinski*, 1 Vet.App. 292, 296–97 (1991) (Court held that BVA did not "err" in applying law to the facts of a particular case). The de novo and the "arbitrary, capricious" standards of review differ significantly with respect to the degree of deference that this Court accords to VA and the BVA when reviewing its decisions. 5 JACOB A. STEIN, GLENN A. MITCHELL & BASIL J. MEZINES, ADMINISTRATIVE LAW § 51.01[2], at 51:44 (1993) [hereinafter 5 STEIN, MITCHELL & MEZINES] (de novo review is the broadest scope of review). When reviewing VA's and the Board's application of the rating schedule to a particular disability, we do not review the schedule. *See* 38 U.S.C.A. § 7252(b) (West 1991) (Court may not review rating schedule); *see also Hood v. Brown*, 4 Vet.App. 301, 304 (1993) (Court acknowledged that it may not review rating schedule; however, the Court may require that terms used in describing each rating be capable of validation and that the Board provide reasons or bases for decisions under the schedule).

Because the selection of a DC is a question of the application of the law to the facts and not a question of law, this clarification leaves intact the Court's longstanding practice of reviewing questions of law de novo without any deference to the BVA's conclusions of law. *See Grottveit v. Brown*, 5 Vet.App. 91, 92 (1993); *Bagby v. Derwinski*, 1 Vet.App. 225, 227 (1991); *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991); *see also Walker Operating Corp. v. F.E.R.C.*, 874 F.2d 1320 (10th Cir.1989) (although an agency's interpretation in an area of expertise is helpful to a reviewing court, the court is not obligated to follow the agency's interpretation of law); *United States v. Emerson*, 846 F.2d 541 (9th Cir. 1988) (court conducts de novo review of agency interpretation of law); *Louisville and Kentucky R.R. v. Kentucky Railroad Commission*, 314 S.W.2d 940, 942 (Ky.Ct. App.1958) (agency interpretation of statute is not binding on court because statutory interpretation is question of law); 5 STEIN, MITCHELL & MEZINES § 51.01[1], at 51:5–51:6 ("The final word on interpretation of law and its applicability, whether constitutional or statutory, resides in the courts, which may substitute their judgment on questions of law for that of the agency on a virtually *carte blanche* basis.").

In his concurring opinion, Judge Steinberg suggests that we follow a different

route, only to have us arrive at the same destination. We will decline to follow his suggested route. His well-reasoned and articulate discussion of the options available to courts in considering issues involving the application of law to fact is made less persuasive by his reliance on *Bucklinger v. Brown*, 5 Vet.App. 435 (1993). In that case, it is clear that the issue is one of causation. In fact, in *Bucklinger*, 5 Vet. App. at 439, Judge Steinberg states that "[a] determination as to the cause of a disability, in this case the cause of the veteran's service-connected tinnitus, is a finding of fact, which the Court reviews under a 'clearly erroneous' standard." (Citation omitted.) The issue in the present case is, as previously stated, the selection of a diagnostic code, which involves the application of the law to the facts rather than a clear question of law or review of a factual determination.

The decision in the instant appeal overrules the Court's holding in *McGrath* and *Horowitz, supra,* that the selection of a DC is a question of law and clarifies language in these cases to ensure that there is no misunderstanding as to the standards of review which we will employ for pure questions of law and for the application of the law to the facts.

■■■■ The Court holds that the BVA and the RO decisions to apply the DC for rhinitis to appellant's tinnitus were arbitrary and capricious. There is no evidence of record that the tinnitus is a result of rhinitis. On the contrary, on a September 14, 1990, consultation report, a VA physician wrote: "In addition, [appellant] has a tinnitus which I feel is associated with a mild high[-]frequency neurosensory hearing loss and is secondary to working on the flight line for several years." R. at 92. Rhinitis is an "inflammation of the mucous membrane of the nose," *see* WEBSTER'S at 620, while tinnitus is "a sensation of noise (as a ringing or roaring) that is caused by a bodily condition (as wax in the ear or a perforated tympanic membrane)," *id.* at 720. Because of the differences between the two conditions and especially because of the absence of evidence of a causal

connection between appellant's rhinitis and tinnitus, it is unclear how the Board or the RO could have concluded that tinnitus should be rated as a complication of rhinitis under DC 6501. Therefore, the Court sets aside as arbitrary and capricious that part of the BVA decision adopting the RO's rating of tinnitus under DC 6501 and remands the matter with directions that the veteran's tinnitus be re-rated under DC 6260. *See Lichtenfels v. Derwinski,* 1 Vet. App. 484, 488 (1991) (where RO and BVA had evaluated a claimant's condition under the wrong DC, Court selected the correct code and directed Board to evaluate condition under that code).

In addition, the Board must deal with all the evidence of record. In its July 1991 decision, the Board did not address Dr. Lockey's statement appearing on a September 1990 consultation report that the tinnitus was "secondary to working on the flight line for several years." R. at 92. At the February 1989 personal hearing, appellant testified that he worked constantly around aircraft for seven years while in the service, and that during one part of his service he did not wear ear plugs because ear plugs were not available. R. at 65. However, the Board did not address Dr. Lockey's diagnosis, appellant's testimony, or the causal relationship, if any, between appellant's duties during military service and his current tinnitus. On remand, the Board must address all the evidence of record and consider appellant's tinnitus under the appropriate DC, as discussed above.

### IV. Unadjudicated Claim

■■■■ The Board also failed in its duty to assist appellant by not adjudicating a claim for otitis externa. Once a claimant has "submitted evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded," VA has a duty to assist the claimant under 38 U.S.C.A. § 5107(a) (West 1991). *Murphy v. Derwinski,* 1 Vet.App. 78, 81–82 (1990); *EF v. Derwinski,* 1 Vet.App. 324, 326 (1991) (VA's statutory duty to assist means that VA must liberally read all documents or oral testimony submitted prior to the BVA decision to include all issues present-

ed); *Proscelle*, 2 Vet.App. at 633 (BVA may not ignore claim for benefits presented on the record before the Board). Here, an April 1988 VA examination indicated: "The right auricle shows some skin inflammation and excoriation in the area immediately adjacent to the external canal. The outer portion of the external canal is also slightly irritated.... [Appellant] has an otitis externa at this time with some excoriation of the skin." R. at 36. These statements constituted a well-grounded claim, and VA thus had a duty to assist appellant under 38 U.S.C.A. § 5107(a) by developing the facts pertinent to this claim and adjudicating the claim. At no time during the VA adjudication process did the RO or the BVA consider the extant evidence relating to otitis externa or further develop the claim. On remand, the Board must adjudicate this claim and provide adequate reasons or bases for its findings of fact.

## V. Claim for Rating Under 38 C.F.R. § 3.324

The Board properly adjudicated a claim for a compensable rating under 38 C.F.R. § 3.324. Under section 3.324,

> [w]henever a veteran is suffering from two or more separate permanent service-connected disabilities of such character as clearly to interfere with normal employability, even though none of the disabilities may be of compensable degree under the 1945 Schedule for Rating Disabilities[,] the rating agency is authorized to apply a 10-percent rating, but not in combination with any other rating.

In its July 1991 decision, the Board addressed the claim for compensation under section 3.324, stating that "the issue of entitlement to a compensable disability evaluation based on the provisions of 38 C.F.R. [§] 3.324 has effectively been rendered moot, in that consideration of such benefits is predicated on the existence *solely* of *noncompensable* service-connected disabilities." *Butts*, BVA 91–21122, at 3 (italics added; underlining in original).

The Board correctly construed this section. Therefore, the Court affirms the Board's July 1991 decision with respect to this claim.

## VI. Conclusion

Accordingly, upon consideration of the record, the Secretary's motion for summary affirmance, and appellant's brief, the Court AFFIRMS in part and VACATES in part the July 11, 1991, decision of the BVA, and REMANDS the case for readjudication consistent with this opinion.

STEINBERG, Judge, concurring:

For the reasons set forth in part II. of this opinion, I concur in the judgment of the Court which, inter alia, reverses the BVA's selection of a diagnostic code for the veteran's service-connected tinnitus. However, I disagree with the Court's analysis suggesting that "questions of the application of the law to the facts" should be reviewed under an "arbitrary [or] capricious" standard, rather than a "clearly erroneous" standard.

As to the Court's conclusion, which prompted en banc consideration, that selection of a diagnostic code is not a question of law but rather one of the application of law to the facts, I do not necessarily disagree. However, both *McGrath v. Brown*, 5 Vet.App. 57, 59 (1993), and *Horowitz v. Brown*, 5 Vet.App. 217, 224 (1993), which the Court is overruling on this question of labels, applied the same standard of review as does the Court now in *Butts*—the "arbitrary [or] capricious" standard from 38 U.S.C.A. § 7261(a)(3)(A) (West 1991).[1] [All subsequent citations to U.S.C.A. are to the West 1991 edition.] Hence, the outcome, under the Court's analysis, would have been the same even had *McGrath* and *Horowitz* been followed rather than overruled.

Although I do not disagree with the label now applied to the question of diagnostic-code selection, I believe the Court has further confused rather than clarified what is

---

1. The Court shall "hold unlawful and set aside" BVA findings, other than findings of material fact, that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law". 38 U.S.C.A. § 7261(a)(3)(A).

already an exceedingly murky area of our jurisprudence—the standard of judicial review for various BVA determinations.

## I. Determining Standard of Judicial Review

### A. Standard of Judicial Review "Categories"

Under our case law, the following have been labelled as "questions of law" subject to a "de novo" standard of review by the Court under 38 U.S.C.A. § 7261(a)(1) [2]: (a) The question whether, under 38 U.S.C.A. § 5108, there is new and material evidence to reopen a previously and finally disallowed claim, *Masors v. Derwinski*, 2 Vet. App. 181, 185 (1992); *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991); (b) the question whether, under 38 U.S.C.A. § 5107(a), a person has submitted a well-grounded claim, *Grottveit v. Brown*, 5 Vet.App. 91, 92 (1993); (c) the question whether, under 38 U.S.C.A. § 1111, there is sufficient evidence to rebut a presumption of soundness upon entry into service, *Bagby v. Derwinski*, 1 Vet.App. 225, 227 (1991); and (d) the question whether, under 38 U.S.C.A. § 1153 and 38 C.F.R. § 3.306 (1992) [all subsequent citations to 38 C.F.R. refer to the 1992 edition], the Board applied correctly, based on the facts found, a statutory and regulatory presumption of aggravation, *Hunt v. Derwinski*, 1 Vet.App. 292, 293 (1991) [3].

The Court has labelled the following as "questions of fact" subject to the "clearly erroneous" standard of review in 38 U.S.C.A. § 7261(a)(4) [4]: (a) The question as to when a disability was incurred, *Santiago v. Brown*, 5 Vet.App. 288, 292 (1993); (b) the question whether, under 38 U.S.C.A. § 1110 (West 1991), a disability was incurred in service, *Hoag v. Brown*, 4 Vet. App. 209, 212 (1993); (c) the question whether, under 38 U.S.C.A. § 1153 and 38 C.F.R. § 3.306, a preexisting disability was aggravated during service, *Corry v. Derwinski*, 3 Vet.App. 231, 234 (1992); (d) the question whether, under 38 U.S.C.A. § 1110 and 38 C.F.R. § 3.303(a), (b), and (d), a disability is service connected, *Horowitz*, 5 Vet.App. at 221–22; *Mense v. Derwinski*, 1 Vet.App. 354, 356 (1991); (e) the question of the degree of impairment resulting from a disability, that is, its rating under the VA schedule for rating disabilities, *Lovelace v. Derwinski*, 1 Vet.App. 73, 74 (1990); (f) the question whether, under 38 U.S.C.A. § 1521(a) and 38 C.F.R. § 4.17, a disability is permanent and total, *Wilson v. Brown*, 5 Vet.App. 103, 107 (1993); (g) the question whether, under 38 C.F.R. § 4.16, a veteran is unemployable for purposes of service-connected disability compensation, *Pratt v. Derwinski*, 3 Vet.App. 269, 270 (1992); (h) the question whether, under 38 U.S.C.A. § 5302(c), a VA debtor was guilty of fraud, *Farless v. Derwinski*, 2 Vet.App. 555, 556 (1992); (i) the question whether, under 38 U.S.C.A. § 101(4)(A)(ii), a veteran's adult child was incapable of self-support, *Bledsoe v. Derwinski*, 1 Vet. App. 32, 33 (1990); and (j) the question whether, under 38 C.F.R. § 3.307(c), a time lapse between the manifestation of a chronic disease and definite diagnosis of that disease was "unreasonable", *Cook v. Brown*, 4 Vet.App. 231, 238 (1993).

---

**2.** The Court shall "decide all relevant questions of law, interpret constitutional, statutory, and regulatory provisions, and determine the meaning or applicability of the terms of an action of the Secretary". 38 U.S.C.A. § 7261(a)(1).

**3.** In *Young v. Brown*, 4 Vet.App. 106, 108 (1993), the Court coalesced the "question of law" label and the "arbitrary and capricious" standard of review, in the same way as did the Court in *McGrath*, 5 Vet.App. at 59, by stating: "Because a decision or finding that a veteran is to be awarded P.O.W. status under 38 U.S.C. § 101(32)(B) is a legal determination, the standard of review is defined by 38 U.S.C. § 7261(a)(3)(A)." Because the Court did not cite 38 U.S.C.A. § 7261(a)(1) or refer to de novo

review, this case does not really fall into the question-of-law category. *See also Fallo v. Derwinski*, 1 Vet.App. 175, 177 (1991) (Court stated that its review of a "question of law" (whether, apparently under 38 U.S.C.A. § 1154(b), the Board applied the correct burden of proof) was "under 38 U.S.C. § 4061(a)(3) [now § 7261(a)(3) ]").

**4.** The Court shall "in the case of a finding of material fact made in reaching a decision in a case before the Department [of Veterans Affairs] with respect to benefits under laws administered by the Secretary, hold unlawful and set aside such finding if the finding is clearly erroneous."

The Court has held or indicated that the following questions are subject to its review on an "arbitrary [or] capricious" standard under 38 U.S.C.A. § 7261(a)(3)(A) (it is this category which the Court now labels "application of the law to the facts", *ante* at 539: (a) The question whether the Board erred, under 38 U.S.C.A. § 5107(b), in determining that evidence was not in equipoise on a question of material fact, *Hayes v. Brown*, 5 Vet.App. 60, 70 (1993); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57–58 (1990); *Jones (McArthur) v. Derwinski*, 1 Vet. App. 210, 218 (1991) (separate views of Steinberg, J.); (b) the question whether the Board erred, under 38 C.F.R. § 4.30(b), in making a discretionary, adverse determination as to a veteran's entitlement to a temporary total convalescence rating, *Foster v. Derwinski*, 1 Vet.App. 393, 394 (1991) [5]; (c) the question whether the Board erred, under 38 U.S.C.A. § 1112(b), in classifying a particular disease (type of arthritis), *Bailey v. Derwinski*, 1 Vet.App. 441, 445–46 (1991); (d) the question whether the Board erred in assigning a particular diagnostic code, *McGrath, supra* [6]; *Horowitz, supra;* (e) the question whether the Board erred, under 38 C.F.R. § 3.105(a), in determining that a prior regional office or BVA decision did not contain "clear and unmistakable error", *Russell v. Principi*, 3 Vet.App. 310, 315 (1992) (en banc); (f) the question whether the Board erred, under 38 U.S.C.A. § 5302(b) and 38 C.F.R. § 1.964(a), in making a discretionary determination on an application for a waiver of indebtedness to a VA debtor, *Smith (Barbara) v. Derwinski*, 1 Vet.App. 267, 279 (1991) [7]; *Schaper v. Derwinski*, 1 Vet.App. 430, 436 (1991) (quoting *Smith* ); and (g) the question whether the Board erred in determining that a regulation governing individual unemployability (38 C.F.R. § 4.16(c)) is not

applicable, *Martin (Ray) v. Brown*, 4 Vet. App. 136, 141 (1993) (Steinberg, J., concurring). In applying the "arbitrary [or] capricious" standard, our cases have tended to characterize the question involved as a question of law, *see McGrath, supra; Young v. Brown*, 4 Vet.App. 106, 108 (1993) [8], if any label was applied at all.

### B. Vagueness in Categorical Distinctions

The distinctions among these categories are not totally clear, but it would appear that cases in the first category (question of law and "de novo" review) involve issues of the sufficiency of the evidence to meet a legal standard and that those in the second category (question of fact and "clearly erroneous" review) involve questions of historical factfinding—i.e., who, what, when, and where.[9] However, the line between the third (application of the law to the facts) and the first two categories appears most irregular to me. For example, I do not see the justification for treating the question whether the evidence is adequate to rebut the presumption of soundness (*Bagby, supra* ) or to constitute a well-grounded claim (*Grottveit, supra* ) as a question of law and treating the question whether the evidence is in equipoise (*Gilbert, supra* ) or shows a certain type of disease (*Bailey, supra* ) as a question of the application of the law to the facts. All of these questions involve the application of the law to the facts and evaluating the Board's assessment of evidence. Indeed, it is unclear why the very question in *Butts* could not be worded as "whether the evidence justifies the diagnostic code assigned"—so as to fit that question into the first category of question of law and "de novo" review.

---

**5.** Although the Court in *Smith (Barbara), infra,* and *Foster,* stressed the discretionary nature of the Secretarial determination under review, the stated standard was "arbitrary, capricious, [or] an abuse of discretion". *Smith (Barbara) v. Derwinski,* 1 Vet.App. 267, 279 (1991); *Foster v. Derwinski,* 1 Vet.App. 393, 394 (1991). These cases do not suggest any difference in the review standard in terms of "abuse of discretion" versus "arbitrary and capricious".

**6.** *See supra* note 3.

**7.** *See supra* note 5.

**8.** *See supra* note 3.

**9.** For this analysis, I am much indebted to Judge Farley whose keen insights have provided great stimulation, inspiration, and learning.

In creating the third category, the Court appears to be suggesting that it somehow matters whether a question falls into the second ("clearly erroneous" review) or third ("arbitrary [or] capricious" review) category. The opinion seems to define the latter standard of review as being whether the agency "articulates a satisfactory explanation for its actions", *ante* at 539 (quoting *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983)), or if "a rational basis" exists for an agency determination, *ante* at 539 (citing *Environmental Defense Fund v. Costle,* 657 F.2d 275, 283 (D.C.Cir.1981)). I can discern, however, no material difference between what the Court in *Butts* seems to establish as the arbitrary-and-capricious standard—whether a rational basis or explanation exists for an agency decision—and what the Court, based on Supreme Court precedent,[10] has consistently defined as the "clearly erroneous" test— whether there is "a plausible basis in the record for the Board's determination." *Gilbert,* 1 Vet.App. at 52. Indeed, during the debate on the Veterans' Judicial Review Act, Pub.L. No. 100–687, Div. A, 102 Stat. 4105 (1988), the principal historical proponents of the Senate and House bills proposing judicial review of BVA decisions expressed the view, in reliance on an administrative law treatise, that the "clearly erroneous" standard would permit a wider ambit of judicial review than would the "arbitrary [or] capricious" standard.[11]

Regardless of whether one of these standards permits broader judicial review, both the "clearly erroneous" and "arbitrary [or] capricious" standards seem to provide substantial deference to the Board's determinations and provide very narrow bases for the Court to overturn those determinations. Binding federal precedent illustrates the congruence of those two supposedly different standards *Compare, e.g., Marsh v. Oregon Nat. Resources Council,* 490 U.S. 360,

378, 109 S.Ct. 1851, 1861–62, 104 L.Ed.2d 377 (1989) ("As we observed in *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416 [91 S.Ct. 814, 823–24, 28 L.Ed.2d 136] ... (1971), in making the factual inquiry concerning whether an agency decision was 'arbitrary or capricious,' the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' This inquiry must 'be searching and careful,' but 'the ultimate standard of review is a narrow one.' "); *Hines v. Secretary of Health and Human Services,* 940 F.2d 1518, 1528 (Fed. Cir.1991) (" 'arbitrary and capricious' is a highly deferential standard of review"); and *Smith (Barbara),* 1 Vet.App. at 279 (quoting *Motor Vehicle Mfrs. Ass'n, supra,* and *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207 (1962), to the effect that "[t]he scope of review under the 'arbitrary and capricious' standard is narrow"), *with, e.g., Concrete Pipe and Products of Cal., Inc. v. Construction Laborers Pension Trust for Southern Cal.,* — U.S. ——, ——, 113 S.Ct. 2264, 2280, 124 L.Ed.2d 539, 564 (1993) ("review under the 'clearly erroneous' standard is significantly deferential"); *Cooter & Gell v. Hartmarx,* 496 U.S. 384, 400, 110 S.Ct. 2447, 2458, 110 L.Ed.2d 359 (1990) ("[i]n practice, the 'clearly erroneous' standard requires the appellate court to uphold any district court determination that falls within a broad range of permissible conclusions"); *and Amadeo v. Zant,* 486 U.S. 214, 223, 108 S.Ct. 1771, 1777, 100 L.Ed.2d 249 (1988) ("[w]e have stressed that the clearly-erroneous standard of review is a deferential one"). Thus, review by the Court of a so-called "question of the application of the law to the facts" under the "arbitrary [or] capricious" standard will apparently result in according a high degree of deference to the Board determination in question.

---

10. *See Gilbert,* 1 Vet.App. at 52 (quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985)).

11. *See* 134 Cong.Rec. S16648–49 (Oct. 18, 1988) (statement of Sen. Cranston) (citing 5 KENNETH CULP DAVIS, ADMINISTRATIVE LAW TREATISE § 29:6 (2d ed. 1984)); 134 Cong.Rec. H10360–61 (Oct. 19, 1988) (statement of Rep. Edwards) (same).

## C. An Alternative Approach

I believe that the highly deferential "arbitrary [or] capricious" standard should not automatically be applied to review of a "mixed" question of law and fact [12], or what the Court in *Butts* calls "a question of the application of the law to the facts". *Ante* at 539. Rather, when confronted with such questions, the Court should determine the appropriate standard of review pursuant to the following two-step analysis derived from Supreme Court guidance and this Court's own jurisprudence: First, the Court should determine whether the "mixed" question can be broken down into component parts presenting more purely factual or legal questions. Second, if the "mixed" question cannot be broken down into separate factual and legal components, the Court should determine whether the specific "mixed" question involves a determination which is more suited to decision by the Board, in which case a deferential review is proper, or is more suited to decision by the Court, in which case a non-deferential review is proper.

As to the first step of this analysis, I note that this Court, in *Hunt, supra*, undertook just such an analysis when confronted with a "mixed" question of law and fact as to whether a veteran was entitled to a statutory presumption of aggravation. In *Hunt*, the Court stated:

> The issue before this Court involves both a question of fact and a question of law. Whether the BVA's finding, that appellant's knee injury did not worsen in service, is erroneous, involves a *question of fact*. Whether the BVA correctly applied 38 U.S.C. § 353 [ (now § 1153) ] and 38 C.F.R. § 3.306(a) (1990) (which defines aggravation for compensation purposes) to those findings involves a *question of law*. We hold that the factual findings of the BVA as to the condition of the knee upon entry into service and upon separation are plausible in light of the record viewed in its entirety and are not clearly erroneous. We also hold that the BVA did not err in applying the definition of "aggravation in service" under 38 U.S.C. § 353 and 38 C.F.R. § 3.306(a) to the facts of the case.

1 Vet.App. at 293 (emphasis added).

As to the second step of the analysis outlined above—determining whether a particular "mixed" question should be reviewed under a deferential or a non-deferential standard—the Supreme Court has stated the following, regarding the appropriate standard for an appellate court's review of a trial court's determinations:

> Perhaps much of the difficulty in this area stems from the practical truth that the decision to label an issue a "question of law," a "question of fact," or a "mixed question of law and fact" *is sometimes as much a matter of allocation as it is of analysis*. At least in those instances in which Congress has not spoken and in which the issue falls somewhere between a pristine legal standard and a simple historical fact, the fact/law distinction at times has turned upon *a determination that*, as a matter of the sound administration of justice, *one* judicial *actor is better suited than another to decide the issue in question*.

*Miller v. Fenton*, 474 U.S. 104, 113–14, 106 S.Ct. 445, 451, 88 L.Ed.2d 405 (1985) (emphasis added); *see Pierce v. Underwood*, 487 U.S. 552, 559–60, 108 S.Ct. 2541, 2547, 101 L.Ed.2d 490 (1988) (determining that, in that case, the *Miller* standard "argues in favor of deferential, abuse-of-discretion review" of a "mixed" question because district court is "better positioned" to decide the question); *Cooter & Gell*, 496 U.S. at

---

**12.** The Supreme Court has characterized issues as "mixed" questions when they involve "the application of a legal standard to a particular set of facts". *TSC Industries v. Northway, Inc.,* 426 U.S. 438, 450, 96 S.Ct. 2126, 2133, 48 L.Ed.2d 757 (1976); *see also Townsend v. Sain,* 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 755 n. 6, 9 L.Ed.2d 770 (1963) ("the application of a legal standard to the historical fact determinations"); *see also Miller v. Fenton,* 474 U.S. 104, 113, 106 S.Ct. 445, 451, 88 L.Ed.2d 405 (1985) (quoted in text, *infra*); *Pullman–Standard Co. v. Swint,* 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 1790 n. 19, 72 L.Ed.2d 66 (1982) ("whether the rule of law as applied to the established facts is or is not violated").

403, 110 S.Ct. at 2459–60 (same).[13] In *Bagby, supra,* this Court endorsed such a functional approach for determining the amount of deference due to a BVA determination, stating:

> Initially, we must determine the proper standard of review of the BVA determination that the presumption of soundness was rebutted.... While the underlying determinations may be factual—in this case, for example, the BVA could have determined as a factual matter that appellant was treated prior to service— whether those facts are sufficient to satisfy the statutory requirement that clear and unmistakable evidence be shown is a legal determination subject to *de novo* review.... ***There will, of course, be instances where what might be characterized as a legal determination will fall so clearly within the area of the BVA's expertise that deference to that expertise requires that the conclusion be characterized as factual.***

1 Vet.App. at 227 (boldface italics added).

Indeed, this very alternative analysis is echoed by the majority's quotation here (*ante* at 538,) of the Ninth Circuit's *Morris* decision, which states, as to judicial review of agency determinations, that "[w]here the question to be decided involves a matter of particular expertise of the agency, the deferential standard should be applied", but that "the more probing de novo standard is appropriate" "where courts have experience in the area and are fully competent to decide the issue". *Morris v. C.F.T.C.,* 980 F.2d 1289, 1293 (9th Cir. 1992).

Based on those precedents and the fuzziness between the standard-of-review categories of questions described above, I think our jurisprudence would be better served if the Court were to avoid the third category and, instead, assign the questions to which an "arbitrary [or] capricious" review is being applied into the first or second category, generally labelling them as questions of law subject to "de novo" review or questions of fact subject to "clearly erroneous" review, depending on whether the Court or the Board is better suited to make the particular determination.

### D. Possible Distinction Between Standards of Review

Finally, it occurs to me that a distinction that might be made between the "arbitrary [or] capricious" and "clearly erroneous" standards might be that our review under the former standard should focus on the Board's *stated* justification or explanation and whether it is rational. *See Smith (Barbara),* 1 Vet.App. at 279 (quoting *Burlington, supra,* and *Motor Vehicle Mfrs. Ass'n, supra,* for the proposition that the Court in applying an "arbitrary [or] capricious" standard of review is to determine whether the agency "articulate[d] a satisfactory explanation for its action, including a 'rational connection between the facts found and the choice made' "); *United States v. Garner,* 767 F.2d 104, 116 (5th Cir.1985) ("the central focus of the arbitrary and capricious standard is on the rationality of the agency's 'decisionmaking' rather than its actual decision"); *Russell,* 3 Vet.App. at 320, 322 (where BVA failed to explain the reasons or bases for its determination on a claim of "clear and unmistakable error", remand, rather than reversal under "arbitrary [or] capricious" standard, was required for Board statement of reasons or bases). In undertaking judicial review under such an analysis, the Court should hold that a Board determination was "arbitrary [or] capricious" only where the Board has provided the basis for its decision. Of course, that is exactly what the Court has *not* done in *Butts* where it should be remanding for the Board to explain its reasons for selecting a particular diagnostic code. Because the BVA's decision lacks an explanation for the Board's selection of the particular diagnostic code chosen, there is not a sufficient basis for the Court to determine whether that decision is "arbitrary [or] capricious".

---

**13.** *See also* William W. Schwarzer et al., *The Analysis and Decision of Summary Judgment Motions,* 139 F.R.D. 441, 454–61 (1992) (discussing criteria for distinguishing questions of law from questions of fact for purposes of rulings on motions for summary judgment).

Indeed, the remand approach is the one the Court has invariably followed in connection with the very first question assigned an "arbitrary [or] capricious" standard of review—the application of the benefit-of-the-doubt doctrine—whether the evidence preponderates against the claim. *See, e.g., Williams v. Brown,* 4 Vet.App. 270, 273–74 (1993); *Jones,* 1 Vet.App. at 217–18; *Hatlestad v. Derwinski,* 1 Vet. App. 164, 170 (1991); *Gilbert,* 1 Vet.App. at 57–58; *but see Gilbert,* 1 Vet.App. at 59–61 (Kramer, J., concurring) (in addition to reviewing adequacy of BVA's reasons or bases, Court should determine whether BVA decision not to apply the benefit of the doubt violated the provisions of 38 U.S.C.A. § 5107(b)). In contrast, the Court has on occasion reversed as clearly erroneous so-called fact determinations by the Board without remanding for an adequate statement of reasons or bases where the reasons or bases in the Board's decision were inadequate; this has been done on the theory that no explanation could be convincing that the *record* afforded a plausible basis for the Board's determination. *See Bucklinger v. Brown,* 5 Vet.App. 435, 440–41 (1993); *Hersey v. Derwinski,* 2 Vet.App. 91, 93–95 (1992); *Gleicher v. Derwinski,* 2 Vet.App. 26, 28–29 (1991); *see also Jones,* 1 Vet.App. at 218–19 (separate views of Steinberg, J.).

## II. Review of Selection of Diagnostic Code in Butts

Applying the analysis suggested in part I.D., above, and adhering to the recent precedential opinion in *Bucklinger, supra,* I believe that the Court should review the Board's selection of a diagnostic code in the instant case under the "clearly erroneous" standard. Under that proposed two-step analysis, the Court should determine whether the "mixed" question can be broken down into purely factual and legal components. The question of the selection of a diagnostic code may properly be called a "mixed question of law and fact" or "a question of the application of the law to the facts" in that it requires the Board to determine which regulatory diagnostic code must be applied (i.e., a legal determination) to the facts found (i.e., a factual determina-

tion). In order to make the legal determination as to which diagnostic code must be applied, the Board must first make a factual determination as to the nature of the disability from which the veteran suffers. If there is no dispute as to the factual elements—e.g., the identity or etiology of the disability—the Board's selection of a diagnostic code will be a purely legal determination, which the Court should review de novo. On the other hand, if there is a dispute as to the underlying facts, the Court should review the Board's determination under the deferential "clearly erroneous" standard applicable to review of questions of fact.

As will be explained below, the Court in *Bucklinger, supra,* very recently followed exactly this analysis in reversing a fact determination by the Board that a veteran's tinnitus was caused by disease rather than trauma, and that precedential opinion should be followed.

In the instant case, the dispute as to the selection of the appropriate diagnostic code pertains to a purely factual issue—the cause of the veteran's tinnitus. If, as the veteran contends, his tinnitus was caused by in-service acoustic trauma, then, as a matter of law, the Board would be required to evaluate that disability under the diagnostic code pertaining to tinnitus resulting from acoustic trauma (38 C.F.R. § 4.87a, diagnostic code 6260). On the other hand, if, as the BVA apparently concluded, the veteran's tinnitus was caused by his rhinitis, then it may have been appropriate, as a matter of law, to evaluate his tinnitus under the diagnostic code pertaining to rhinitis. Therefore, determination of the purely factual issue as to the cause of the veteran's tinnitus may be—and, in my view, is in this case—dispositive of the "mixed" question regarding selection of the appropriate diagnostic code.

Applying the "clearly erroneous" standard to the facts of this case compels the conclusion that the Board's determination that the veteran's tinnitus was caused by his rhinitis rather than in-service noise exposure is clearly erroneous and must be

reversed. In determining that the veteran's tinnitus was not caused by in-service acoustic trauma, the Board stated:

> We acknowledge various statements to the effect that the veteran's tinnitus is, in fact, the result of inservice acoustic trauma sustained on a flight line. However, it should be noted that the earliest clinical indication of the presence of any high frequency sensorineural hearing loss normally associated with such trauma is in September 1990, slightly more than five years following the veteran's discharge from service. Based upon such findings, and following a full review of the record, the Board remains unconvinced that the veteran's current tinnitus is in any way related to acoustic trauma sustained in service.

*Chester L. Butts*, BVA 91–21122, at 8–9 (July 11, 1991). As the majority notes, the record contains a VA physician's September 1990 opinion that the veteran's tinnitus was caused by his in-service noise exposure, and no evidence to the contrary. R. at 92; *ante* at 540. Additionally, the veteran's January 1985 report of examination at separation from service contains a diagnosis of "mild high frequency hearing loss" (R. at 14), although the degree of hearing loss noted on that examination was not then sufficient to warrant VA disability compensation. *See* 38 C.F.R. § 3.385; *Hensley v. Brown*, 5 Vet.App. 155 (1993).

In *Bucklinger, supra*, a case with almost identical facts, the Court has just held that where "there is no evidence in the record that could plausibly support a conclusion that the veteran's tinnitus was caused by disease rather than in-service acoustic trauma", "that conclusion by the Board must be set aside under 38 U.S.C.A. § 7261(a)(4)" as clearly erroneous. *Bucklinger*, 5 Vet. App. at 440. Under this precedent, the Board's factual determination that the veteran's tinnitus was caused by rhinitis rather than in-service noise exposure should be set aside as clearly erroneous under section 7261(a)(4). That conclusion compels the holding that, as a matter of law, the Board applied the incorrect diagnostic code to evaluate the veteran's tinnitus. I thus concur in the Court's holding that "the veteran's tinnitus must be re-rated under DC 6260". *Ante* at 540.

The majority asserts that *Bucklinger* is not directly relevant because in *Bucklinger* "it is clear that the issue is one of causation", a question of fact, whereas in *Butts* the issue is "the selection of a diagnostic code, which involves the application of the law to the facts rather than a clear question of law or review of a factual determination." *Ante* at 540. However, it is clear in this case, as it was in *Bucklinger*, that the dispositive issue is one of causation, which is a factual question. Resolution of the factual question as to the cause of the veteran's tinnitus will dictate the resolution of the issue of the selection of the appropriate diagnostic code.

In *Bucklinger*, the Court held:

> [T]here is no ... evidence whatsoever in the record which would support a conclusion that the veteran's tinnitus was caused by external otitis rather than noise exposure....

> In contrast, the veteran testified under oath that he had been exposed during service to loud noises, including noise from weapons fire during his Pacific combat service. R. at 150–52. Furthermore, in the report of a May 1990 VA audiological examination, the examiner stated that the veteran's "tinnitus is consistent with a ... history of noise exposure". R. at 136. In view of this evidence, and in the absence of any evidence of record that the veteran's tinnitus was caused by anything other than noise exposure, there is no plausible basis for the Board's conclusion that the veteran's tinnitus was caused by disease rather than trauma. Therefore, that conclusion by the Board must be set aside under 38 U.S.C.A. § 7261(a)(4) (West 1991).

*Bucklinger*, 5 Vet.App. at 440.

In *Butts*, the Court holds:

> There is no evidence of record that the tinnitus is a result of rhinitis. On the contrary, on a September 14, 1990, consultation report, a VA physician wrote: "In addition [appellant] has a tinnitus which I feel is associated with a mild high[-]frequency neurosensory hearing

loss and is secondary to working on the flight line for several years." R. at 92.... Because of the differences between [rhinitis and tinnitus] and especially because of the absence of evidence of a causal connection between appellant's rhinitis and tinnitus, it is unclear how the Board or the RO could have concluded that tinnitus should be rated as a complication of rhinitis under DC 6501. Therefore, the Court sets aside as arbitrary and capricious that part of the BVA decision adopting the RO's rating of tinnitus under DC 6501 and remands the matter with directions that the veteran's tinnitus be re-rated under DC 6260.

*Ante* at 540 (citation omitted).

There is no appreciable difference between the issues decided in *Bucklinger* and *Butts*. The only distinction between the two cases is the one unnecessarily created by the majority here in applying a different (or at least purportedly different) standard of review in *Butts* than was applied to the same issue in *Bucklinger*. The majority's statement that the issue in *Bucklinger* was one of fact while the issue in *Butts* is one of "the application of the law to the facts" is misleading, cannot withstand close scrutiny, and illustrates why the standard of judicial review should be determined by relying not upon such labels but, rather, as described in part I.C. of this opinion, upon appropriate dissection of the issues presented.