Citation Nr: 1719223 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 13-06 684 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Entitlement to an initial compensable rating for status post fracture of the distal fifth right metacarpal.

2. Entitlement to an initial rating in excess of 10 percent for bilateral hearing loss.




REPRESENTATION

Veteran represented by: Cummins B. Jones, Attorney at Law


ATTORNEY FOR THE BOARD

Z. Sahraie, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the United States Army from April 1989 to July 1991. 

This matter is before the Board of Veterans' Appeals (Board) on appeal of an April 2011 rating decision of the Department of Veterans Affairs (VA) Atlanta Regional Office (RO) in Decatur, Georgia.

The matter was previously remanded by the Board in a September 2015 decision. It has been returned to the Board for appellate review. 

This appeal was processed using the Virtual VA paperless claims processing system and the Veterans Benefits Management System (VBMS). Accordingly, any future consideration of this case should take into consideration the existence of these records.


FINDINGS OF FACT

1. Throughout the appeal period, the Veteran has had pain and reduced grip strength in his right hand, but has retained full range of motion in all digits, and general function of his right hand would not be better served with amputation and prosthesis of his right little finger.

2. Throughout the appeal period, audiometric findings have shown that Veteran had no more than Level II hearing acuity in the right ear and Level IV hearing acuity in the left ear, with no exceptional pattern of hearing loss at any time.






CONCLUSIONS OF LAW

1. The criteria for an initial compensable rating for status post fracture of the distal fifth right metacarpal are not met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.3, 4.40, 4.45(f), 4.59, 4.71a, Diagnostic Codes 5216-5230.

2. The criteria for an initial rating in excess of 10 percent for bilateral hearing loss are not met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.85, Diagnostic Code 6100 (2016). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) enhanced VA's duties to notify and assist claimants in substantiating their claims for VA benefits. 
38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. 
§§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and representative of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1). This notice should be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004).

In a claim for increase, the VCAA requirement is generic notice, that is, the type of evidence needed to substantiate the claim, namely, evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment, as well as general notice regarding how disability ratings and effective dates are assigned. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). The record reflects that adequate notice was provided in April 2010, which informed of the evidence generally needed to support a claim for an increased disability rating, what actions the Veteran needed to undertake, and how VA would assist in developing the claim. 

Regarding the duty to assist in this case, the Veteran was afforded hand and finger examinations, in May 2010 and February 2016. He also received audiometric examinations in May 2010 and February 2016. The examination reports are of record. To that end, when VA undertakes to either provide an examination or to obtain an opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). In this case, the reports reflect that necessary audiometric and speech recognition testing was conducted, all relevant questions were answered, and the VA examiners relied upon an accurate history and complaints of disability obtained from the Veteran. Further, under Martinak v. Nicholson, 21 Vet. App. 447, 455 (2007), VA examiners are required to address the functional effects, including the effects on occupational and daily functioning, of a veteran's hearing loss. In this case, taken together, the VA examiners adequately addressed the effect of the Veteran's hearing loss on occupational and daily activities. The Board also finds the aforementioned hand and finger examinations adequate, as the examiners considered the relevant history of the Veteran's symptoms, provided sufficiently detailed descriptions of his disability, and included clear conclusions with supporting data. Stefl v. Nicholson, 21 Vet. App. 120, 123-23 (2007). 

All relevant documentation, including VA treatment (medical) records, has been secured and all relevant facts have been developed. There remains no question as to the substantial completeness of the record as to the hearing loss rating issue on appeal. 38 U.S.C.A. §§ 5103, 5103A, 5107; 38 C.F.R §§ 3.102, 3.159, 3.326(a). Any duties imposed on VA, including the duties to assist and to provide notification, have been met as set forth above.



Initial Compensable Rating for Status Post Fracture of the Distal Fifth Right Metacarpal

The Veteran's right metacarpal disability is currently rated as noncompensable. He contends that throughout the entire appeal his metacarpal disability has been more severe than the currently assigned rating and that he is entitled to a higher initial rating. Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

Disability evaluations are determined by the application of a schedule of ratings which is based, as far as can practically be determined, on the average impairment of earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Each service-connected disability is rated on the basis of specific criteria identified by Diagnostic Codes. 38 C.F.R. § 4.27. When rating the Veteran's service-connected disability, the entire medical history must be borne in mind. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). The Court has held that a claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Hart v. Mansfield, 21 Vet. App. 505 (2007). Separate compensable evaluations may be assigned for separate periods of time if such distinct periods are shown by the competent evidence of record during the appeal, a practice known as "staged" ratings. See Fenderson v. West, 12 Vet. App. 119, 126 (1999).

Regulations require that where there is a question as to which of two evaluations is to be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

When evaluating joint disabilities rated on the basis of limitation of motion, VA must consider granting a higher rating in cases in which functional loss due to pain, weakness, excess fatigability, or incoordination is demonstrated, and those factors are not contemplated in the relevant rating criteria. See 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202 (1995). Although pain may be a cause or manifestation of functional loss, limitation of motion due to pain is not necessarily rated at the same level as functional loss where motion is impeded. See Mitchell v. Shinseki, 25 Vet. App. 32 (2011). Thus, functional loss caused by pain must be rated at the same level as if the functional loss were caused by any of the other factors cited above. See id. In evaluating the severity of a joint disability, VA must determine the overall functional impairment due to these factors. 

The Board notes that the rating criteria that are applicable to the Veteran's right little finger disability are identical for the major (dominant) extremity and the minor (non-dominant) extremity.

Under Diagnostic Code 5230, limitation of motion of the ring or little finger, any limitation of motion is noncompensable. 38 C.F.R. § 4.71a. 

Degenerative or traumatic arthritis established by X-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joints involved. 38 C.F.R. § 4.71a, Diagnostic Codes 5003, 5010 (2016). When, however, the limitation of motion of the specific joint involved is noncompensable under the appropriate diagnostic codes, a 10 percent rating is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added under Diagnostic Code 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. In the absence of limitation of motion, a 10 percent evaluation is warranted if there is X-ray evidence of involvement of two or more major joints or two or more minor joint groups and a 20 percent evaluation is authorized if there is X-ray evidence of involvement of two or more major joints or two or more minor joint groups and there are occasional incapacitating exacerbations. 38 C.F.R. § 4.71a, Diagnostic Codes 5003, 5010 (2016).

For the purpose of rating disabilities from arthritis, major joints include the shoulders and wrists; the interphalangeal, metacarpal and carpal joints of the upper extremities are considered groups of minor joints. 38 C.F.R. § 4.45(f) (2015).

Although the record does not reflect significant treatment sought or received for the Veteran's right little finger disability, it contains several VA examinations. The first, conducted in May 2010, shows complaints of painful movement and limited range of motion and dexterity of the right hand. The examiner noted visible deformity, with some difficulty grasping objects, adding the Veteran demonstrated difficulty tying shoelaces and fastening buttons with his right hand, but could lift and tear paper without difficulty. There was no showing of limitation in range of motion. The examiner concluded the Veteran's right hand strength was slightly reduced, but noted no ankylosis of any digits, adding the Veteran's hand function was not additionally limited by pain, fatigue, weakness, lack of endurance, or incoordination after repetitive use. The examiner characterized the Veteran's injury as an "old well-healed fracture," opinion the "effect of the condition...is slight limitation with repetitive heavy lifting with the right hand," and "[t]he effect of the condition on the [Veteran's] daily activity is none." 

A second VA examination, conducted in March 2013, appears to mischaracterize the Veteran's injury as carpometacarpal joint ankylosis of the right thumb. The record, including the Veteran's submissions in support of his claim, has characterized his injury alternately as boxer's fracture or status post fracture of the distal fifth right metacarpal, which injury does not implicate the Veteran's thumb. This examiner did note a degree of grip weakness of the Veteran's right hand, with no limitation of finger flexion or extension. 

A final VA examination, conducted in February 2016, showed normal range of motion of all digits of the right hand, but noted pain on examination. The Veteran demonstrated full 5/5 grip strength, with no muscle atrophy and no ankylosis noted. With regard to the Veteran's pain, the examiner indicated it "does not result in [or] cause functional loss." The Veteran was able to perform repetitive use testing of the right hand without loss of function after three repetitions. Ultimately, the examiner indicated the "[s]everity of [the] Veteran's subjective complaints of right hand and fifth metacarpal finger pain are not medically substantiated; [w]hile the Veteran's x-ray does indicate mild narrowing of the radiocarpal joint space, all other joint spaces are maintained." 

The evidence reflects complaints of pain, weakness, and tenderness of the Veteran's right hand, and examiners have noted visible deformity. The Veteran has also consistently reported to examiners that his motor activities with the right hand are limited due to pain. However, there are no reports of altogether incapacitating episodes. The Board has carefully considered the Veteran's statements to the effect that his functional impairment from pain, deformity, and tenderness interferes with his daily activities. 38 C.F.R. §§ 4.10, 4.40, 4.41, 4.44, 4.45, 4.59. 

After reviewing all of the evidence and subjective complaints, the Board finds that the preponderance of the evidence shows that a compensable disability rating is not warranted. Specifically, under the applicable diagnostic criteria, any limitation of motion or ankylosis of the little finger of either hand is noncompensable. 38 C.F.R. § 4.71a, DCs 5227 and 5230. Moreover, although 38 C.F.R. § 4.59 and Burton provide that actual painful, unstable, or malaligned joints, due to healed injury, are entitled to at least the minimum compensable rating for the joint, there is no compensable rating for limitation of motion or ankylosis of the little finger. Therefore, application of 38 C.F.R. § 4.59 does not assist the Veteran in this case. See Sowers v. McDonald, 27 Vet. App 472 (2016). Thus, no compensable rating is available. Additionally, the above-discussed evidence confirms the Veteran is not beset by additional limitation due to pain, fatigue, weakness, lack of endurance, or incoordination after repetitive use.

As to rating the Veteran's right little finger disability as an amputation under 38 C.F.R. § 4.71a, Diagnostic Code 5156, no VA examiner has assessed functional impairment of a degree that no effective function remains other than that which would be equally well served by an amputation with prosthesis. The February 2016 examiner explicitly noted that the Veteran's functioning was not diminished to this degree. Thus, the Board finds that the Veteran's degree of adverse symptomatology does not form a sufficient basis for finding the severity of his right little finger disability equivalent to an amputation. Butts v. Brown, 5 Vet. App. 532, 539 (1993) (holding that the Board's choice of diagnostic code should be upheld so long as it is supported by explanation and evidence). 

Finally, as to rating the Veteran's right little finger disability under any other diagnostic code used to rate finger disabilities and/or as a wrist disability, the Board finds that, given the nature and location of his service-connected disorder, it is not ratable under any of the other criteria to rate finger disabilities and/or the wrist because these other criteria do not deal with his distal fifth right metacarpal. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102, 4.3, 4.71a, DCs 5215 to 5230 (2016); Butts.

Entitlement to an Initial Evaluation in Excess of 10 Percent for Bilateral Hearing Loss

Ratings for service-connected hearing loss range from noncompensable (0 percent) to 100 percent. These ratings are based on organic impairment of hearing acuity as measured by the results of controlled speech discrimination testing together with the average hearing threshold level as measured by pure tone audiometry tests in the frequencies 1,000, 2,000, 3,000 and 4,000 cycles per second. In evaluating service-connected hearing loss, disability ratings are derived by a mechanical application of the rating schedule to the numeric designations assigned after audiometric evaluations are performed. See Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992).

Diagnostic Code 6100 provides a table for rating purposes (Table VI) to determine a Roman numeral designation (I through XI) for hearing impairment. The hearing impairment is established by a state licensed audiologist including a controlled speech discrimination and the pure tone threshold average, which is the sum of the pure tone thresholds at 1000, 2000, 3000, and 4000 Hertz (Hz), divided by four. See 38 C.F.R. § 4.85. Table VII is used to determine the percentage evaluation by combining the Roman numeral designations for hearing impairment of each ear. The horizontal row represents the ear having the poorer hearing and the vertical column represents the ear having the better hearing. Id.

Under 38 C.F.R. § 4.86(a) (exceptional patterns of hearing impairment), when the pure tone threshold at each of the four specified frequencies (1000, 2000, 3000, and 4000 Hz) is 55 decibels or more, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIa, whichever results in the higher numeral. Each ear is to be evaluated separately. The provisions of 38 C.F.R. § 4.86(b) provide that when the pure tone threshold is 30 decibels or less at 1000 Hz, and 70 decibels or more at 2000 Hertz, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIa, whichever results in the higher numeral. That numeral will then be evaluated to the next higher Roman numeral. 

The Veteran contends that an initial disability rating in excess of 10 percent is warranted for the service-connected bilateral hearing loss.

After a review of all the evidence, lay and medical, the Board finds that, for the entire rating period on appeal, the weight of the competent and probative lay and medical evidence demonstrates that a higher disability rating than 10 percent for the service-connected bilateral hearing loss is not warranted. The relevant evidence for this claim consists primarily of the various VA audiometric examinations of record.

In May 2010, the Veteran received a VA audtiometric examination. At that time, pure tone thresholds, in decibels, were recorded as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
35
35
45
50
50
LEFT
50
55
65
65
70

Speech audiometry revealed speech recognition ability of 100 percent in the right ear and of 96 percent in the left ear.

Based on the results of these tests, a Roman numeral I is designated for the right ear, and a Roman numeral II is designated for the left ear, from Table VI of 38 C.F.R. § 4.85. Intersecting the numeric designations to the applicable row and column for the right and left ear, a 0 percent rating is derived from Table VII of 38 C.F.R. § 4.85. The intersection point for these categories shows that the hearing loss does not exceed the levels contemplated for a noncompensable (0 percent) schedular rating. Referring to Table VIA of 38 C.F.R. § 4.85, a roman numeral IV is designated for the left ear, while a roman numeral II is designated for the right ear. Intersecting the numeric designations to the applicable row and column for the right and left ear, a 0 percent rating is again derived from Table VII of 38 C.F.R. § 4.85; thus, this audiometric and speech recognition evidence does not support a finding of a compensable rating. While the Board shall not reduce any rating already assigned, this examination does not support the Veteran's contention that a rating higher than 10 percent is warranted.

In February 2016, the Veteran received a second VA audiometric examination. At that time, pure tone thresholds, in decibels, were recorded as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
25
30
30
35
65
LEFT
25
35
35
40
40

Speech audiometry revealed speech recognition ability of 94 percent in the right ear and of 94 percent in the left ear.

Again, application of the tables in 38 C.F.R. § 4.85 shows the Veteran's hearing loss does not exceed the levels contemplated for a noncompensable schedular rating. A Roman numeral I is designated for both ears from Table VI of 38 C.F.R. § 4.85. Intersecting the numeric designations to the applicable row and column for the right and left ear, a 0 percent rating is derived from Table VII of 38 C.F.R. § 4.85. The intersection point for these categories shows that the hearing loss does not exceed the levels contemplated for a noncompensable (0 percent) schedular rating. Thus, this audiometric and speech recognition evidence does not support a finding of a compensable rating. The February 2016 examiner further noted, "[t]ympanograms are within normal limits," adding the "Veteran has hearing aids for his hearing loss but does not wear them for unknown reason."

The examination report further reflects that the Veteran's hearing loss does not impact ordinary conditions of daily life, including the ability to work. 

The provisions of 38 C.F.R. § 4.86(b) are not applicable as no examination on record shows simultaneous puretone threshold of 30 decibels or less at 1000 Hertz and 70 decibels or more at 2000 Hertz in either ear. 

In sum, the application of the rating schedule to the audiometric findings does not establish that an increased disability rating in excess of 10 percent for bilateral hearing loss is warranted at any time during the rating period on appeal. The weight of the competent and probative lay and medical evidence of record is against an increased disability rating in excess of 10 percent for bilateral hearing loss for the entire rating period on appeal. Because the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine is not for application. See 38 U.S.C.A. § 5107; 38 C.F.R. §§ 4.3, 4.7.


ORDER

Entitlement to a compensable rating for status post fracture of the distal fifth right metacarpal is denied.

Entitlement to an initial evaluation in excess of 10 percent for bilateral hearing loss is denied.







____________________________________________
GAYLE E. STROMMEN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs