﻿Citation Nr: AXXXXXXXX
Decision Date: 10/30/19 Archive Date: 10/30/19

DOCKET NO. 181220-1416
DATE: October 30, 2019

ORDER

Entitlement to an increased rating in excess of 20 percent for a right shoulder superior labrum anterior and posterior (SLAP) tear repair is denied.

Entitlement to an initial 10 percent rating for right knee strain is granted.

REMANDED

Entitlement to service connection for a sinus disability is remanded.

Entitlement to service connection for irritable bowel syndrome (IBS) is remanded.

Entitlement to service connection for obstructive sleep apnea is remanded.

Entitlement to service connection for a left shoulder condition is remanded.

FINDINGS OF FACT

1. The Veteran’s right shoulder SLAP tear repair has been manifested by arm limitation of motion at or above the shoulder level of the major extremity.

2. The Veteran's right knee strain has resulted in painful motion. 

CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 20 percent for a right shoulder SLAP tear repair have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, Diagnostic Code 5201.

2. The criteria for a 10 percent rating for right knee painful motion have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, Diagnostic Code 5260.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board notes that the rating decisions on appeal were issued in July 2013, March 2015, and January 2017. In July 2018, the Veteran elected the modernized review system and selected higher-level review. 38 C.F.R. § 19.2(d).

The Veteran served on active duty from May 2000 to October 2000, June 2004 to June 2006, and November 2009 to January 2011. The agency of original jurisdiction (AOJ) readjudicated the Veteran’s claims in a November 2018 RAMP rating decision. The Veteran timely appealed the RAMP rating decision to the Board and requested evidence submission review option, allowing him 90 days to submit evidence pertinent to his claim. That 90-day period has now elapsed.

Increased Rating

A disability rating is determined by the application of VA’s Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R. § 4.1.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as “staged ratings,” whether it is an initial rating case or not. Fenderson v. West, 12 Vet. App. 119, 126-27 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

1. Right Shoulder SLAP Tear Repair

The Veteran’s right shoulder disability is rated under Diagnostic Code 5201. 

Under Diagnostic Code 5201, a rating of 20 percent is warranted when motion of the major arm is limited to shoulder level. A 30 percent evaluation is warranted for limitation of motion of the major arm midway between the side and shoulder level. A 40 percent rating contemplates limitation of motion of the major arm to 25 degrees from the side. 38 C.F.R. § 4.71a, Diagnostic Code 5201.

Regulations define the normal range of motion for the shoulder as forward flexion from 0 to 180 degrees, abduction from 0 to 180 degrees, external rotation to 90 degrees, and internal rotation to 90 degrees. 38 C.F.R. § 4.71, Plate I.

The Veteran is documented to be right handed, and therefore his right shoulder is a major joint. See March 2015 VA examination. 

Rating factors for a disability of the musculoskeletal system include functional loss due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion, weakness, excess fatigability, incoordination, pain on movement, swelling, or atrophy. 38 C.F.R. §§ 4.40, 4.45; DeLuca v. Brown, 8 Vet. App. 202 (1995).

During a March 2015 VA examination, the Veteran had flexion to 130 degrees, abduction to 100 degrees, and internal and external rotation to 80 degrees. The Veteran demonstrated pain during the examination, moderate pain on palpation on his anterior shoulder, pain on weight bearing, and crepitus. The Veteran reported experiencing flare-ups resulting in pain and decreased range of motion. The examiner opined that the Veteran’s flexion was reduced to 120 degrees due to pain, weakness, and fatigue after repetitive use testing, repetitive use over time, and during flare-ups. Finally, the Veteran had strength of 4 out of 5 in flexion and 3 out of 5 during abduction. 

The evidence of record does not indicate that the Veteran had range of motion in his right shoulder at or below the shoulder level and therefore does not meet the requirements for a 20 percent rating under Diagnostic Code 5201. 38 C.F.R. § 4.7, 4.71a; Diagnostic Code 5201.

The Board also finds that there is no basis for assigning a higher rating based on consideration of any of the factors addressed in 38 C.F.R. §§ 4.40, 4.45 and DeLuca, 8 Vet. App. at 204-7. As noted above, the Veteran was examined after repetitive use over time and during a flare-up and exhibited flexion of 120 degrees due with pain, fatigue, and weakness. The competent medical evidence therefore reflects that the assigned 20 percent rating properly compensates the Veteran for the extent of functional loss resulting from any such symptoms.

Accordingly, the preponderance of the evidence is against assignment of an increased evaluation in excess of 20 percent for the Veteran’s service-connected right shoulder SLAP tear repair.

2. Right Knee Strain

The Veteran asserts that his right knee disability is worse than the assigned disability rating would indicate. 

As an initial matter, the Board notes that the Veteran’s right knee was initially rated under Diagnostic Code 5257, which is based on the presence of recurrent subluxation or lateral instability. 

The assignment of a particular diagnostic code is “completely dependent on the facts of a particular case.” See Butts v. Brown, 5 Vet. App. 532, 538 (1993). One diagnostic code may be more appropriate than another based on such factors as an individual’s relevant medical history, the diagnosis and demonstrated symptomatology. Any change in a diagnostic code by a VA adjudicator must be specifically explained. See Pernorio v. Derwinski, 2 Vet. App. 625, 629 (1992). Furthermore, the selection of diagnostic codes or applicable rating criteria is not protected and may be appropriately revised if the action does not result in the reduction of compensation payments. See 38 C.F.R. §§ 3.951, 3.957; Butts, 5 Vet. App. 532; VAOPGCPREC 71-91 (Nov. 7, 1991).

For the reasons explained in greater detail below, the Board finds that the Veteran is more appropriately rated with a 10 percent rating for painful motion under Diagnostic Code 5260.

A. Limitation of Motion

Limitation of motion for the knee is rated under 38 C.F.R. § 4.71a under Diagnostic Codes 5260 and 5261.

The normal range of motion for the knee is from 0 degrees extension to 140 degrees flexion. 38 C.F.R. § 4.71, Plate II. Leg flexion limited to 60, 45, 30, and 15 degrees warrants noncompensable, 10 percent, 20 percent, and 30 percent evaluations, respectively. 38 C.F.R. § 4.71a, Diagnostic Code 5260. Leg extension limited to 5, 10, and 15 degrees warrants noncompensable, 10 percent, and 20 percent evaluations, respectively. 38 C.F.R. § 4.71a, Diagnostic Code 5261.

When assigning a disability rating, some of the regulations preceding the rating schedule add flexibility to the listed Diagnostic Codes. 38 C.F.R. § 4.59 is one such regulation. In Petitti v. McDonald, 27 Vet. App. 415, 424 (2015), the Court of Appeals for Veterans Claims (Court) noted that § 4.59 “explain[s] how to arrive at proper evaluations under the DCs appearing in the disability rating schedule.” The provisions of § 4.59 acknowledge that a claimant’s disability may cause actual pain or painful motion but still not be severe enough to warrant a compensable rating under the appropriate Diagnostic Code. Accordingly, when there is evidence of painful motion, § 4.59 operates to provide at least the minimum compensable rating available under the Diagnostic Code for the joint. See Sowers v. McDonald, 27 Vet. App. 472, 478 (2016).

While § 4.59 adds flexibility to the rating schedule, it is also limited by the terms of the appropriate Diagnostic Code for the joint. Thus, if the appropriate Diagnostic Code for the joint does not provide a compensable rating, a claimant is not entitled to a minimum rating. Id. at 481 (“Section 4.59 may intend to compensate painful motion, but it does not guarantee a compensable rating”). Sowers highlights the importance of the Diagnostic Code under which the Veteran is rated because § 4.59 operates within the parameters of the Diagnostic Code.

Where the record contains evidence of an actually painful, unstable, or malaligned joint or periarticular region, § 4.59 is potentially applicable. See Southall-Norman v. McDonald, 28 Vet. App. 346, 354 (2016).

The Veteran has reported painful motion throughout the period on appeal. A May 2012 private treatment record notes that the Veteran experienced pain in his knee since 2009. A November 2016 VA examiner found the Veteran had normal range of motion, with no pain or tenderness evident during the examination. The Veteran also had normal range of motion after repetitive use testing. However, the Veteran reported flare-ups, which he described as pain but not a decrease in range of motion. In line with the Veteran's report, the examiner found that the Veteran had no additional lost functional ability after repetitive use over time or during a flare-up. 

Ultimately, the Board finds that although the Veteran did not demonstrate pain or a limitation of motion during the VA examination, his report of pain during flare-ups, coupled with his earlier reports of continued pain, warrant a 10 percent rating, but no higher, due to painful motion. 38 C.F.R. §§ 4.59, 4.7, 4.71a DC 5260.

As the Veteran reported no additional lost range of motion during flare-ups, which was supported by the VA examination, there is no basis for assigning a rating higher based on consideration of any of the factors addressed in 38 C.F.R. §§ 4.10, 4.40, 4.45, 4.59 and DeLuca, 8 Vet. App. at 204-7. 

B. Instability

Diagnostic Code 5257 provides ratings for other knee impairments with the following ratings assigned: 10 percent for slight, 20 percent for moderate, and 30 percent for severe recurrent subluxation or lateral instability. 38 C.F.R. § 4.71a, Diagnostic Code 5257. The words “slight,” “moderate,” and “severe” as used in the various diagnostic codes are not defined in the VA Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all the evidence, to the end that its decisions are “equitable and just.” 38 C.F.R. § 4.6. 

The November 2016 VA examiner found that the Veteran's had no history of instability and stability testing was normal. 

Objective medical evidence of knee instability is not required, and objective medical evidence is not categorically more probative than lay evidence. English v. Wilkie, 30 Vet. App. 347. However, the Veteran has made no assertion that he has experienced instability or subluxation, and the results of the only objective examination of record demonstrated normal joint stability. Therefore, the Board finds that a separate rating for right knee instability is not warranted. 38 C.F.R. § 4.71a, DC 5257. 

C. Semilunar Cartilage

Diagnostic Code 5258 provides a 20 percent disability rating for dislocated semilunar cartilage with frequent episodes of “locking,” pain, and effusion into the joint. 38 C.F.R. § 4.71a, Diagnostic Code 5258. Similarly, Diagnostic Code 5259 provides a 10 percent disability rating for symptomatic removal of semilunar cartilage. 38 C.F.R. § 4.71a, Diagnostic Code 5259.

The November 2016 VA examiner found that the Veteran’s had no history of a meniscal condition, nor has the Veteran asserted the presence of a meniscal condition. As such, separate ratings under Diagnostic Codes 5258 or 5259 are not warranted.

D. Additional Conditions

The Board has also considered whether an additional or higher rating would be available under other diagnostic codes pertaining to the knee. There is no indication of right knee ankylosis; no impairment of the tibia or fibula; and no diagnosis of genu recurvatum. As such, there is no basis for evaluating the Veteran’s disability under Diagnostic Codes 5256, 5262, or 5263.

REASONS FOR REMAND

1. Sinus Condition and IBS

The issues of entitlement to service connection for a sinus condition and IBS are remanded to correct a duty to assist error that occurred prior to the rating decision on appeal. In a December 2016 rating decision, the AOJ deferred a decision on the Veteran's claims for service connection for a sinus condition and IBS. However, the AOJ never attempted to schedule those examinations prior to denying the Veteran's claims. 

2. Obstructive Sleep Apnea 

The issue of entitlement to service connection for obstructive sleep apnea is remanded to correct a duty to assist error that occurred prior to the rating decision on appeal. The AOJ obtained medical opinions in July 2013 and June 2014, prior to the rating decision on appeal. However, neither of the medical opinions provide an adequate rationale regarding whether the Veteran’s obstructive sleep apnea had its onset in service or is otherwise related to service. Specifically, while both VA examiners determined that the Veteran's obstructive sleep apnea was caused by a developmentally narrow airway, neither of the examiners adequately addressed the Veteran's assertions that the symptoms of obstructive sleep apnea began while he was in service, nor did they address the proximity of the Veteran's diagnosis to the end of his active duty service. 

3. Left Shoulder Disability

The issue of entitlement to service connection for a left shoulder disability is remanded to correct a duty to assist error that occurred prior to the rating decision on appeal. The Veteran has reported daily left shoulder pain since 2009, see, e.g., May 2012 VA treatment record and March 2015 VA examination report, and has a diagnosis of left shoulder arthritis, see May 2012 VA treatment records. The Veteran has asserted that his left shoulder disability is related to service or is secondary to his service-connected right shoulder disability. A March 2015 VA examiner evaluated the Veteran's left shoulder, but provided no etiological opinion. 

The matters are REMANDED for the following action:

1. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any sinus condition. 

(a.) If no diagnosis is made, the examiner must opine whether the Veteran’s symptoms represent the manifestations of an undiagnosed illness.

(b.) If, instead of an undiagnosed illness, the examiner makes a clinical diagnosis, the examiner must opine whether it is at least as likely as not related to an in-service injury, event, or disease. The examiner must consider the Veteran’s in-service diagnosis of sinusitis and asserted exposure to burn pits. 

(c.) If a clinical diagnosis is made, the examiner must opine on whether the etiology or pathophysiology of the Veteran’s sinus condition is not conclusive as to this particular Veteran. 

2. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any gastrointestinal condition. 

(a.) If no diagnosis is made, the examiner must opine whether the Veteran’s symptoms represent the manifestations of an undiagnosed illness.

(b.) If, instead of an undiagnosed illness, the examiner makes a clinical diagnosis, the examiner must opine whether it is at least as likely as not related to an in-service injury, event, or disease. The examiner must consider the Veteran’s in service diagnosis of constipation. 

(c.) If a clinical diagnosis is made, the examiner must opine on whether the etiology or pathophysiology of the Veteran’s gastrointestinal condition is not conclusive as to this particular Veteran. 

3. Obtain an additional opinion from an appropriate clinician regarding whether the Veteran's obstructive sleep apnea is at least as likely as not related to an in-service injury, event, or disease. The reviewing clinician must consider and accept as true the Veteran’s assertions that he experienced snoring and woke gasping for air while he was in service and the relatively short interval between the Veteran’s service and his formal diagnosis of sleep apnea. The examiner must also opine on whether the etiology or pathophysiology of the Veteran’s sleep apnea is not conclusive as to this particular Veteran.

(Continued on the next page)

 

4. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any left shoulder disability. The examiner must opine whether it is at least as likely as not related to an in-service injury, event, or disease. The examiner must also opine whether it is at least as likely as not proximately due to the Veteran's service-connected right shoulder disability or aggravated beyond its natural progression by the Veteran's service-connected right shoulder disability. If a left shoulder diagnosis is made, the examiner must also opine on whether the etiology or pathophysiology of the Veteran’s left shoulder condition is not conclusive as to this particular Veteran.

 

 

DONNIE R. HACHEY

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board E. Mine, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.