﻿Citation Nr: AXXXXXXXX
Decision Date: 11/27/19 Archive Date: 11/27/19

DOCKET NO. 190507-9032
DATE: November 27, 2019

ORDER

Entitlement to an increased rating above 10 percent for corneal scars is denied.

FINDING OF FACT

At the time of the March 2019 Rating Decision, the preponderance of the evidence weighed against finding that an increased rating was warranted based on incapacitating episodes, visual field or muscle function, visual acuity, or scarring or disfigurement. 

CONCLUSION OF LAW

The criteria for entitlement to an increased rating above 10 percent for corneal scars have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.321, 4.1, 4.79, Diagnostic Code (DC) 6009 (2018).

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran had qualifying service from June 1975 to June 1979.

Through a June 2018 Rapid Appeals Modernization Act (RAMP) Opt-In Election Form and a May 2019 VA Form 10182, the Veteran elected higher-level review through the direct review docket, which only permits the Board to review the evidence of record at the time of the agency of original jurisdiction (AOJ) rating decision in March 2019. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)). 

Increased Ratings

In determining the severity of a disability, the Board applies the criteria set forth in the Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. If the disability more closely approximates the criteria for the higher of two ratings, the higher rating is assigned. 38 C.F.R. § 4.7. 

1. Increased rating above 10 percent for corneal scars

The evaluation of visual impairment is based on impairment of visual acuity (excluding developmental errors of refraction), visual field, and muscle function. 38 C.F.R. § 4.75(a). Examinations of visual impairment must be conducted by a licensed optometrist or ophthalmologist and the examiner must identify the disease, injury, or other pathologic process for any visual impairment found; examinations of visual field or muscle function will be conducted only when medically indicated. 38 C.F.R. § 4.75 (b). Evaluation of visual acuity is based on corrected distance vision with central fixation; the measurements for each eye are applied to the table for Impairment of Central Visual Acuity. 38 C.F.R. § 4.76 (b)(1). Evaluation of visual field is based on the remaining field of vision in each eye; the table of Ratings for Impairment of Visual Fields provides ratings for visual field loss. 38 C.F.R. §§ 4.77, 4.79.

The Veteran’s bilateral corneal scars have been rated under DC 6009 (for unhealed eye injury) at 10 percent since June 23, 1979. See March 2019 Codesheet; 38 C.F.R. § 4.79, DC 6009. The current appeal period begins on March 25, 2015 (the date of receipt of the claim on March 25, 2016 (VA Form 21-526EZ), plus a one-year lookback period from the date of claim). Gaston v. Shinseki, 605 F.3d 979, 982 (Fed. Cir. 2010). During the pendency of the appeal, VA issued a final rule revising the portion of the VA Schedule for Rating Disabilities that addresses the organs of special sense and schedule of ratings-eye; the final rule went into effect May 13, 2018. 89 Fed. Reg. 15316 (Apr. 10, 2018). Where there is a change in the rating criteria during the appeal period, the Board will consider the claim in light of both the former and revised schedular rating criteria, although an increased evaluation based on the revised criteria cannot predate the effective date of the amendments.

Under the former criteria (2008), DC 6009 instructed to evaluate pursuant to the General Rating Formula for Diagnostic Codes 6000 through 6009. The General Rating Formula for DCs 6000 through 6009 instructs to evaluate on the basis of either visual impairment due to the particular condition or on incapacitating episodes, whichever results in a higher evaluation. Where incapacitating episodes have a total duration of at least 1 week, but less than 2 weeks, during the past 12 months, a 10 percent rating is warranted. Where incapacitating episodes have a total duration of at least 2 weeks, but less than 4 weeks, during the past 12 months, a 20 percent rating is warranted. Where incapacitating episodes have a total duration of at least 4 weeks, but less than 6 weeks, during the past 12 months, a 40 percent rating is warranted. Where incapacitating episodes have a total duration of at least 6 weeks during the past 12 months, a 60 percent rating is warranted. A Note following the General Rating Formula indicates that, for VA purposes, an incapacitating episode is a period of acute symptoms severe enough to require prescribed bed rest and treatment by a physician or other healthcare provider. Impairment of visual acuity is rated under Table V and DCs 6061-6079. 38 C.F.R. § 4.83a. A 10 percent rating is warranted for impairment of central visual acuity in the following situations: (1) when vision in one eye is correctable to 20/50 and vision in the other eye is correctable to 20/40; (2) when vision in both eyes is correctable to 20/50; (3) when vision in one eye is correctable to 20/70 and vision in the other eye is correctable to 20/40; or, (4) when vision in one eye is correctable to 20/100 and vision in the other eye is correctable to 20/40. 38 C.F.R. § 4.84a, DCs 6078, 6079. A 20 percent rating is warranted for impairment of central visual acuity in the following situations: (1) when vision in one eye is correctable to 20/70 and vision in the other eye is correctable to 20/50; (2) when vision in one eye is correctable to 20/100 and vision in the other eye is correctable to 20/50; (3) when vision in one eye is correctable to 20/200 and vision in the other eye is correctable to 20/40; or, (4) when vision in one eye is correctable to 15/200 and vision in the other eye is correctable to 20/40. 38 C.F.R. § 4.84a, DCs 6077, 6078. For brevity, the Board will not list all the ratings available based on Impairment of Central Visual Acuity, as the remainder are not applicable in this case.

Under the revised criteria (2018), DC 6009 instructs to evaluate pursuant to the General Rating Formula for Diseases of the Eye. The General Rating Formal for Diseases of the Eye instructs to evaluate on the basis of either visual impairment due to a particular condition or on incapacitating episodes, whichever results in a higher evaluation. Where there are documented incapacitating episodes requiring at least 1 but less than 3 treatment visits for an eye condition during the past 12 months, a 10 percent rating is warranted. Where there are documented incapacitating episodes requiring at least 3 but less than 5 treatment visits for an eye condition during the past 12 months, a 20 percent rating is warranted. Where there are documented incapacitating episodes requiring at least 5 but less than 7 treatment visits for an eye condition during the past 12 months, a 40 percent rating is warranted. Where there are documented incapacitating episodes requiring 7 or more treatment visits for an eye condition during the past 12 months, a 60 percent rating is warranted. Note (1) indicates that, for the purposes of evaluations under 38 C.F.R. § 4.79, an incapacitating episode is an eye condition severe enough to require a clinic visit to a provider specifically for treatment purposes. Note (2) indicates that examples of treatment may include but are not limited to: systemic immunosuppressants or biologic agents; intravitreal or periocular injections; laser treatments; or other surgical interventions. Note (3) indicates that, for the purposes of evaluating visual impairment due to a particular condition, refer to 38 C.F.R. §§ 4.75-4.78 and to § 4.79, DCs 6061-6091.

The April 2016 VA examiner diagnosed: dry eyes bilaterally; nuclear sclerotic cataracts bilaterally; corneal scars bilaterally; blepharitis bilaterally; meibomian gland dysfunction bilaterally; left eye papilloma; pinguecula bilaterally; tilted optic disc syndrome bilaterally; vitreous syneresis bilaterally; and peripheral cystoid degeneration bilaterally. During this examination, the Veteran reported: soreness; floaters; blur; tearing; sensitivity to light; dizziness; periodic flashes; right eye affected greater than left eye; symptoms worsen in conjunction with foreign body sensation; glasses and eye drops sometimes reduce or eliminate symptoms; monocular diplopia bilaterally (more blur); and seeing scars in vision. Visual acuity measured: 20/40 or better bilaterally for uncorrected distance; 20/200 bilaterally for uncorrected near; 20/40 or better bilaterally for corrected distance; and 20/40 or better bilaterally for corrected near. There was no difference in corrected visual acuity for distance and near vision. The examiner indicated that the Veteran had: conjunctivitis and other conjunctival conditions; corneal conditions; cataracts and lens conditions; inflammatory eye conditions and/or injuries; and episodes of light sensitivity, dizziness, and headaches that affect his ability to work. In an April 2016 addendum opinion, the examiner clarified that: (a) there was no diagnosis of diplopia because the Veteran does not have true double vision (he sees double monocularly; the double vision referenced in the examination refers to binocular double vision; the monocular double vision is due to a combination of corneal scars, astigmatism, and cataracts); (b) monocular diplopia is due to nuclear sclerotic cataracts bilaterally; (c) soreness is due to dry eye bilaterally and meibomian gland dysfunction bilaterally; (d) floaters are due to vitreal syneresis bilaterally; (e) blur is due to nuclear sclerotic cataracts bilaterally and dry eyes bilaterally; (f) tearing and sensitivity to light is due to dry eyes bilaterally, blepharitis bilaterally, and meibomian gland dysfunction bilaterally; (g) corneal scarring plays a role with monocular diplopia, blur, and sensitivity to light; (h) the Veteran has not experienced episodes of incapacitation, for VA purposes, apart from the 1-2 weeks of incapacitation during service immediately after the explosion that caused the eye injury; (i) definite corneal scarring noted bilaterally, but not visible from gross examination (need to do slit lamp to see them), so there is no external scarring/disfigurement; and (j) visual field testing was not performed because it was not indicated, but corneal scars would not lead to visual field defect.

A January 2017 Kaiser Permanente record listed various health problems, including: bilateral incipient cataracts; corneal opacities bilaterally; and bilateral vitreous floaters. March 2017 Loma Linda VAMC records documented the Veteran’s report of blurred vision, bilateral eye watering, chronic floaters, no pain, no redness, no discharge, and no change in vision; the provider assessed dry eye (artificial tears, lid hygiene), presurgical cataract bilaterally (UV precautions), and traumatic corneal scars (observe). In the April 2017 Notice of Disagreement, the Veteran reported greater difficulty seeing and contended that his corneal scars caused his vision to worsen. The May 2017 VA examiner diagnosed: corneal scarring bilaterally; cataracts bilaterally; presbyopia bilaterally; hyperopia bilaterally; and astigmatism bilaterally. During this examination, the Veteran reported having good vision with his current glasses, but being bothered by bright lights, especially when driving at night. Visual acuity measured: 20/40 or better in the left eye and 20/50 in the right eye for uncorrected distance; 20/100 in the left eye and 20/200 in the right eye for uncorrected near; 20/40 or better bilaterally for corrected distance; and 20/40 or better bilaterally for corrected near. There was no difference in corrected visual acuity for distance and near vision. The examiner indicated that the Veteran had: bilateral corneal scarring; bilateral trace nuclear sclerosis cataracts; no incapacitating episodes in the last 12 months; and no impact on the ability to work.

In the July 2017 VA Form 9, the Veteran: reported constant floaters in his eyes caused by the corneal scars; contended that the corneal scars caused his vision to worsen (decreased visual acuity); and contended that his diagnosed, left-posterior vitreous detachment is a result of the trauma from the corneal scarring. A July 2017 Kaiser Permanente Record listed various health problems, including: left vitreous floaters; left posterior vitreous detachment; and central corneal opacity bilaterally. In an August 2017 Statement, the Veteran reported that he: was diagnosed with cataracts; has decreased vision bilaterally; has daily floaters that cross over visually in the light, especially in sunlight with glare problems; has soreness and dryness due to the scarring; uses prescribed eye drops and glasses; has episodes of sore eyes and floaters every week; and has weekly episodes of blurry double images, fogginess, and headaches on sunny days (has bright glare spots and floaters all over his eyes, which cause disorientation, so he has to go inside to rest). The August 2017 VA examiner diagnosed: dry eye bilaterally; cataracts bilaterally; and corneal scars bilaterally. Visual acuity was not tested, apart from corrected distance, which was 20/40 or better bilaterally. The examiner indicated that the Veteran had: lacrimal gland and lid disorders (some dry eye); corneal conditions (traumatic corneal scars); cataracts and lens conditions (preoperative cataracts); no incapacitating episodes in the last 12 months; and no impact on the ability to work.

An August 2018 Loma Linda VAMC record documented the Veteran’s history of traumatic corneal scars and presurgical cataracts bilaterally; the provider noted that the Veteran requires laser surgery. The January 2019 VA examiner diagnosed paracentral corneal scars bilaterally. Visual acuity measured: 20/40 in the left eye and 20/50 in the right eye for uncorrected distance; 20/20 or better bilaterally for corrected distance; 20/200 bilaterally for uncorrected near; and 20/20 or better bilaterally for corrected near. There was no difference in corrected visual acuity for distance and near vision. The examiner indicated that: the bilateral corneal scars do not result in a decrease of visual acuity or other visual impairment and that there are no current residuals (condition is asymptomatic); there were no incapacitating episodes in the last 12 months; and there is no impact on the ability to work. In a January 2019 addendum opinion, the examiner clarified that, even under the revised definition of incapacitating episodes, the Veteran had not experienced any such episodes in the last 12 months due to the eye condition; the examiner also noted that the scarring was permanent, static, does not need treatment, and will not need treatment. In a May 2019 Correspondence, the Veteran reported that he: experiences daily incapacitating episodes; loses vision and cannot function when exposed to sunlight; has dizzy spells; has to wear transitional glasses to help keep light out of his eyes; has a lot of sore eyes and reddening; has a lot of excess eye moisture and run off; has constant blurry vision in sunlight with or without glasses; and has cataracts due to the corneal scarring. 

When a disability not specifically provided for in the rating schedule is encountered, it will be rated under a closely related disease or injury in which not only the functions affected, but the anatomical localization and symptomatology are closely analogous. 38 C.F.R. § 4.20. The assignment of a particular diagnostic code is “completely dependent on the facts of a particular case.” Butts v Brown, 5 Vet. App. 532, 538 (1993). One diagnostic code may be more appropriate than another based on such factors as an individual’s relevant medical history, the current diagnosis, and demonstrated symptomatology. In this case, the Veteran has reported various, vison-related symptoms, including photophobia; his headaches are a secondary occurrence related to his photophobia. See April 2016 VA examination (headaches with light sensitivity); August 2017 Statement (headaches on sunny days). A rating under DC 6009 for unhealed eye injury is more closely analogous to his corneal scars than a rating under the migraine headache criteria as the functions affected (vision, photophobia), anatomical localization (corneal scars), and symptomatology (vision, photophobia) are related to the Veteran’s eyes. Accordingly, the Board finds that headache is a symptom of the eye disorder (not a separate diagnosed disorder or “condition” warranting evaluation under the rating criteria for migraine headaches) and that evaluation under DC 6009 is more appropriate.

Turning to the rating criteria under DC 6009, the Board notes that there is no indication in the record that the Veteran has had incapacitating episodes related to his corneal scars. The 2018 changes under the General Rating Formal for Diseases of the Eye included redefining incapacitating episodes to include the more lenient “an eye condition severe enough to require a clinic visit to a provider specifically for treatment purposes.” Here, however, the only treatment the evidence documents is use of prescribed artificial tears, for which the Veteran is not required to attend a clinic visit to a provider. See August 2017 Loma Linda VAMC (medication instructions provide that the Veteran drop the artificial tears into his own eyes four times per day). The Veteran also wears glasses, but the evidence does not indicate that his prescription changes so severely/frequently as to require clinic visits to a provider specifically for eye treatment purposes. Although, in the May 2019 Correspondence, the Veteran contended that he is often incapacitated due to his eye symptoms, the Veteran’s description of incapacitating episodes is simply inconsistent with the schedular definition for VA purposes. As such, a higher rating based on incapacitating episodes is not warranted.

Regarding a higher rating due to visual field or muscle function, the Board notes that the VA and private examiners have all found that the Veteran does not have a visual field deficit, diplopia, or other muscle function manifestations related to his corneal scars. As such, a higher rating related to loss of visual field or muscle function are not warranted.

Regarding a higher rating due to visual acuity, the objective evidence indicates that the bilateral cornea scars do not result in decreased visual acuity. Specifically: (a) the April 2016 VA examiner measured corrected distance at 20/40 or better bilaterally; (b) the May 2017 VA examiner measured corrected distance at 20/40 or better bilaterally; (c) the August 2017 VA examiner measured corrected distance at 20/40 or better bilaterally; and (d) the January 2019 VA examiner measured corrected distance at 20/20 or better bilaterally and emphasized that the scars do not result in a decrease of visual acuity or other visual impairment. Bilateral corrected distance vision of 20/40 or better warrants a noncompensable rating; as such, a higher rating related to visual acuity is not warranted.

Regarding a higher rating based on scarring or disfigurement, the evidence indicates that the Veteran does not have disfigurement related to his corneal scars. The April 2016 VA examiner found no external scarring or disfigurement, specifying that there was definite corneal scarring bilaterally, but that it was not visible from gross examination (need to do slit lamp to see them). The May 2017 VA examiner indicated that the only scarring or disfigurement was the cornea scarring. The August 2017 VA examiner similarly noted that the only scarring or disfigurement was the cornea scarring, adding that the scars were not elevated. The January 2019 VA examiner also found no external scarring or disfigurement. As such, a higher rating based on scarring or disfigurement is not warranted. 

(Continued on the next page)

 

In sum, the evidence does not warrant a higher rating based on incapacitating episodes, visual field or muscle function, visual acuity, or scarring or disfigurement. Further, although the objective evidence suggests noncompensable symptoms, the Veteran has been rated at 10 percent for more than 20 years, which protects the rating from reduction. 38 C.F.R. § 3.951 (a disability which has been continuously rated at or above any evaluation for 20 or more years cannot be reduced except upon a showing that such rating was based on fraud). Because the preponderance of the evidence at the time of the March 2019 Rating Decision weighed against finding that an increased rating was warranted, the benefit of the doubt doctrine does not apply and the Veteran’s claim must be denied.

 

R. FEINBERG

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board H. Daus, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.