﻿Citation Nr: AXXXXXXXX
Decision Date: 06/30/20 Archive Date: 06/30/20

DOCKET NO. 191118-43962
DATE: June 30, 2020

ORDER

Entitlement to an initial evaluation of 10 percent and an evaluation of 20 percent from March 2, 2018 for left ankle posttraumatic arthritis is granted.

Entitlement to an initial evaluation of 10 percent for left ankle scars is granted.

Entitlement to an earlier effective date than November 28, 2011, for the grant of service connection for left ankle posttraumatic arthritis is denied.

Entitlement to a 10 percent disability rating, for the period beginning November 28, 2011, for multiple noncompensable service-connected disabilities pursuant to 38 C.F.R. § 3.324 is dismissed.

FINDINGS OF FACT

1. The baseline severity of the Veteran’s pre-existing left ankle disability is determined to equate to a noncompensable disability rating

2. Prior to March 2, 2018, the Veteran’s left ankle disability most nearly approximates that manifested by moderate limitation of motion.

3. From March 2, 2018, the Veteran’s left ankle disability was manifested by ankylosis in plantar flexion, less than 30 degrees but not ankylosis in plantar flexion, between 30 and 40 degrees, or in dorsiflexion between 0 and 10 degrees. 

4. The scar on the Veteran’s ankle is painful. 

5. The Veteran was notified of a rating decision denying his claim for service connection for a left ankle disability in June 1999 and did not timely appeal or submit new and material evidence within one year of notice of the denial, therefore that rating decision became final. 

6. The next formal or informal claim for a left ankle disability was received on November 28, 2011; the first documented aggravation of the Veteran’s preexisting left ankle disability was in November 1997. 

7. For the period beginning November 28, 2011, the Veteran is in receipt of a compensable schedular rating, and his claim under 38 C.F.R. § 3.324 is moot.

CONCLUSIONS OF LAW

1. The criteria for entitlement to an initial evaluation of 10 percent for left ankle posttraumatic arthritis have been met. 38 U.S.C. §§ 1155, 5107(b); 38 C.F.R. §§ 3.102, 3.159, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code (DC) 5003-5270.

2. From March 2, 2018, the criteria for entitlement to an evaluation of 20 percent for left ankle posttraumatic arthritis have been met. 38 U.S.C. §§ 1155, 5107(b); 38 C.F.R. §§ 3.102, 3.159, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, DC 5003-5270.

3. The criteria for entitlement to an initial 10 percent evaluation for left ankle scars have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. § 4.118, DC 7805.

4. The criteria for entitlement to an effective date earlier than November 28, 2011 for the grant of service connection for left ankle posttraumatic arthritis have not been met. 38 U.S.C. § 5110; 38 C.F.R. § 3.400(q)(2), (r).

5. The claim for entitlement to a 10 percent disability rating for multiple noncompensable service-connected disabilities pursuant to 38 C.F.R. § 3.324 is dismissed. 38 U.S.C. § 1155; 38 C.F.R. § 3.324.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the United States Army from May 1974 to June 1977. The record also shows periods of active duty for training (ACDUTRA) in the Army National Guard. 

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in various sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The AMA became effective on February 19, 2019. 

The AMA modernized review system applies to all claims for which VA issues a notice of an initial decision on or after the February 19, 2019 effective date of the modernized review system. The AMA may also apply to claims where the claimant has elected review of a legacy claim under the modernized review system. 38 C.F.R. §§ 3.2400, 19.2. 

A legacy claim is a claim for which VA provided notice of an initial decision prior to the February 19, 2019 effective date of the AMA modernized review system. 38 C.F.R. §§ 3.2400, 19.2. 

A claimant with a legacy claim may elect to participate in the AMA modernized review system in one of two ways: First, a claimant with a legacy claim could elect to opt-in to the modernized review system on or after November 1, 2017 as part of the rapid appeals modernization program (RAMP) pursuant to section 4 of Public Law 115-55. 38 C.F.R. §§ 3.2400; 19.2. Second, a claimant with a legacy claim may elect to opt-in to the AMA modernized review system following issuance, on or after the effective date of the AMA, of a VA Statement of the Case (SOC) or Supplemental Statement of the Case (SSOC). 38 C.F.R. §§ 3.2400, 3.2500, 19.2. 

If a claimant with a legacy claim does not elect to participate in the AMA modernized review system by one of the methods described above, his or her claim remains in the legacy system. If the claimant wishes to appeal an initial decision that was issued by the RO under the legacy system, the Veteran must initiate the appeal by filing a Notice of Disagreement (NOD). The appeal must also be perfected to the Board with the filing of a Substantive Appeal. Only then does the Board have jurisdiction over a legacy appeal. 38 C.F.R. §§ 3.2400, 19.2.

In the present case, the Veteran opted into AMA system after issuance of an SOC in September 2019, through a VA Form 10182, dated November 18, 2019, selecting the Direct Review lane. Thus, the Board will only consider evidence submitted up to the date of the SOC on September 19, 2019. Evidence submitted outside of this time frame cannot be considered. 

Increased Ratings

The Veteran’s entire history is reviewed when making disability evaluations. 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Additionally, at the time of an initial rating, consideration of the appropriateness of a staged rating is also required. Fenderson v. West, 12 Vet. App. 119 (1999). 

Disability evaluations are determined by comparing a Veteran’s symptoms with criteria set forth in VA’s Schedule for Rating Disabilities, which are based on average impairment in earning capacity. 38 U.S.C. § 1155; 38 C.F.R. Part 4. 

The evaluation of the same disability under various diagnoses is to be avoided. 38 C.F.R. § 4.14. 38 C.F.R. § 4.14 does not preclude the assignment of separate evaluations for separate and distinct symptomatology where none of the symptomatology justifying an evaluation under one diagnostic code is duplicative of or overlapping with the symptomatology justifying an evaluation under another diagnostic code. Esteban v. Brown, 6 Vet. App. 259, 262 (1994).

When a question arises as to which of two ratings applies under a particular diagnostic code, the higher of the two evaluations is assigned if the disability more closely approximates the criteria for the higher rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

1. Entitlement to an initial evaluation of 10 percent for left ankle posttraumatic arthritis and an evaluation of 20 percent from March 2, 2018

Initially, the Board will address the Veteran’s claim to remove the “baseline” 10 percent severity of his pre-existing left ankle disability, prior to aggravation by his in-service left ankle injury. The Board grants this request. 

The April 2018 rating decision which granted entitlement to service connection for posttraumatic arthritis of the left ankle, provided the grant on the basis that his left ankle disability which clearly and unmistakably existed prior to service was aggravated by an ankle injury during a period of ACDUTRA. In order to grant service connection based on aggravation, VA is required to cite medical evidence of the baseline severity of the nonservice-connected disability (here: the left ankle), prior to aggravation by the service-connected injury. The 10 percent “baseline” severity was found based on evidence of painful motion under Diagnostic Code 5010.

The Board notes that at the time of the April 2018 rating decision granting entitlement to service connection for a left ankle disability, the record contained the Veteran’s service treatment records, private treatment records, and a VA nexus opinion related to aggravation of the pre-existing left ankle disability by the in-service injury. 

The Veteran’s pre-existing left ankle injury is well documented in the record. Following his 1984 injury, the Veteran was examined for reenlistment in the Army National Guard. His August 1996 enlistment examination was negative for any issues of the musculoskeletal system, lower extremities, or feet. The Veteran did not endorse swollen or painful joints on his August 1996 report of medical history. Service treatment records from November 1997 reveal the Veteran reinjured his left ankle during training. The treating physician noted the previous injury and documented the Veteran’s lack of problems since the 1984 injury had healed. Again, in December 1997, a treating physician noted the Veteran had no complaints of ankle pain or treatment for 13 years until he reinjured his ankle in November 1997. In May 1998, a private physician examined the Veteran and determined that his pre-existing injury resolved, and the Veteran subsequently reported no further ankle complaints until sustaining the injury in 1997 while training for the National Guard. While the physician could not completely rule out recurrence of the original injury, after extensive testing his suspicion of recurrence was extremely low. In August 1998, a second private physician found the Veteran had reasonable function of his ankle until he reinjured it in 1997 and subsequently had a significant amount of symptomatology. The Veteran has consistently reported that he had no left ankle symptoms after the 1984 injury. 

It is noteworthy that in March 2018, a VA examiner was unable to determine the baseline level of severity prior to aggravation or based on the earliest medical evidence following aggravation. Nevertheless, the examiner’s rationale stated that “by the end of 1984, Veteran was doing well in regards to his left ankle and x-ray indicated no changes from post op x-ray…multiple times in the records it is stated that Veteran was functioning normally in regards to left ankle after that injury healed.” Therefore, there is no evidence to support painful motion of the ankle prior to the November 1997 injury. The Board finds the overwhelming weight of the evidence supports that the Veteran’s baseline severity prior to aggravation more nearly approximates to that of a noncompensable rating.

Having determined the baseline severity of the Veteran’s left ankle disability is at zero percent, the Board turns to his current evaluation

The Veteran’s initial 10 percent rating for his left ankle posttraumatic arthritis was assigned under DC 5010-5270. Hyphenated codes are used when a rating under one Diagnostic Code requires use of an additional Diagnostic Code to identify the basis for the evaluation assigned; the additional code is shown after the hyphen. 38 C.F.R. § 4.27. Diagnostic Code 5010 represents traumatic arthritis, which, in turn, is evaluated as limited motion, as arthritis, under the affected body part. For the purpose of rating disability from arthritis, the ankle is considered a major joint. 38 C.F.R. § 4.45 (f).

Diagnostic Code 5010 provides that arthritis substantiated by x-ray findings is rated based on limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. When limitation of motion is noncompensable under the appropriate diagnostic codes, a rating of 10 percent is for application for each major joint or group of minor joints affected by limitation of motion. A 20 percent evaluation is warranted for x-ray evidence of involvement of 2 or more major or minor joints, with occasional incapacitating exacerbations. See 38 C.F.R. § 4.71a, Diagnostic Code 5003. However, the Veteran has not reported experiencing any incapacitating exacerbations.

The appropriate diagnostic codes 5270-5274 refer to limitation of motion for the ankle, these diagnostic codes are appropriate to evaluate the Veteran’s left ankle arthritis. Diagnostic Code 5270 provides ratings for ankylosis of the ankle. Ankylosis of the ankle in planter flexion less than 30 degrees is to be rated 20 percent disabling; ankylosis of the ankle in planter flexion between 30 degrees and 40 degrees, or in dorsiflexion between 0 degrees and 10 degrees, is to be rated 30 percent disabling; ankylosis of the ankle in planter flexion at more than 40 degrees, or in dorsiflexion at more than 10 degrees or with abduction, adduction, inversion, or eversion deformity, is to be rated 40 percent disabling. 38 C.F.R. § 4.71a. 

Diagnostic Code 5271 provides ratings based on limitation of extension of the ankle. Moderate limitation of motion of the ankle is rated as 10 percent disabling; and marked limitation of motion of the ankle is rated as 20 percent disabling. 38 C.F.R. § 4.71a.

The Board finds that prior to March 2, 2018, Diagnostic Code 5271 is applicable to the veteran’s left ankle disability. From March 2, 2018, the record supports that the Veteran had ankylosis of the left ankle. Therefore, from that date, the Board finds application of Diagnostic Code 5270 is appropriate. As will be discussed, the record does not support that the Veteran had malunion of the os calcis or astragalus, or astragalectomy of the ankle. As such, Diagnostic Codes 5272, 5273 and 5274 are not for application

When evaluating musculoskeletal disabilities based on limitation of motion, a higher rating must be considered where the evidence demonstrates additional functional loss due to pain, pursuant to 38 C.F.R. §§ 4.40 and 4.45. The diagnostic codes pertaining to range of motion do not subsume §§ 4.40 and 4.45. The rule against pyramiding does not forbid consideration of a higher rating based on greater limitation of motion due to pain on use, including use during flare-ups. DeLuca v. Brown, 8 Vet. App. 202 (1995); Mitchell v. Shinseki, 25 Vet. App. 32 (2011).

The Veteran’s VA treatment records reflect ongoing complaints of pain in the ankle throughout the appeal period. These records also show symptom exacerbation on use, and the Veteran’s consistent reports that prolonged standing or walking caused substantial ankle pain. An October 2013 Podiatry Consult documents limited left ankle range of motion. However, there is no indication of the extent of the limitation. 

The Veteran was first afforded a VA examination of his left ankle in March 2018. The examination report shows ankylosis of the left ankle in plantar flexion less than 30 degrees. Muscle strength testing reveals 1/5 rate strength for left ankle plantar flexion and dorsiflexion. The examiner also noted malunion of os calcis or astragalus. However, the examiner clarified that the Veteran had dislocation of the talus leading to marked deformity at the time of the 1984 injury. The examiner explained that the Veteran had surgery in February 1984 to include talus repair. 

In reviewing the evidence summarized above, the Board finds sufficient bases in the record to warrant assignment of staged ratings for his left ankle disability. Prior to March 2, 2018, the record does not support that the Veteran’s left ankle disability resulted in marked limitation of motion, thus, a higher rating based on limitation of motion is not warranted for this period. 38 C.F.R. § 4.71a, DC 5271. Further, for this period, the Veteran’s reported functional loss due to pain is contemplated by the assigned 10 percent rating, and there is no indication of additional functional loss warranting a higher level of compensation. See 38 C.F.R. §§ 4.40, 4.45, 4.59.

With regard to the period beginning on March 2, 2018, the Board finds the criteria for a 20 percent evaluation under DC 5270 are met based on ankylosis in plantar flexion. A higher rating is not warranted under DC 5270 as there is no evidence of ankylosis in plantar flexion between 30 and 40 degrees or in dorsiflexion between 0 and 10 degrees. The Board has also considered whether a higher or separate rating is warranted under another of the diagnostic codes related to the ankle, DCs 5271 through 5274. DC 5271 through 5274 each provide a maximum 20 percent rating of which the Veteran is already in receipt. In regard to whether a separate rating is warranted under DCs 5271 through 5274, the Board finds that it is not. There is no evidence of ankylosis of the subastragalar or tarsal joint, current malunion of os calcis or astragalus, or astragalectomy, therefore 5272 through 5274 are inapplicable. In regard to DC 5271, VA treatment records document the Veteran’s inability to move his left ankle. However, evaluation of the same disability under several Diagnostic Codes, known as pyramiding, must be avoided. Separate ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition is not duplicative of or overlapping with the symptomatology of the other condition. 38 C.F.R. § 4.14; Esteban v. Brown, 6 Vet. App. 259, 262 (1994). The March 2, 2018 VA examiner noted the ankle had less movement than normal due to ankylosis. There is direct evidence that the Veteran’s limited range of motion of the ankle is not a distinct disability and that the symptomatology of this condition is duplicative of or overlapping with the symptomatology of the Veteran’s ankylosis of the left ankle under DC 5270. In sum, the criteria for a disability rating of 20 percent, but no higher, for left ankle posttraumatic arthritis are met from May 2, 2018.

Extraschedular Consideration

The Veteran contends that an extraschedular rating is warranted for his left ankle disability because it impacts his ability to perform the activities of daily living and interferes with his ability to drive a forklift. See March 2019 Notice of Disagreement (NOD).

The Board generally must consider referral for extraschedular consideration only “[w]here there is evidence in the record that shows exceptional or unusual circumstances or where the veteran has asserted that a schedular rating is inadequate.” Doucette v. Shulkin, 38 Vet. App. 366, 369-70 (2017) (quoting Yancy v. McDonald, 27 Vet. App. 484, 493 (2016) (internal quotations omitted)). The United States Court of Appeals for Veterans Claims has set out a three-part test, based on the language of 38 C.F.R. § 3.321 (b)(1), for determining whether a Veteran is entitled to an extraschedular rating: (1) the established schedular criteria must be inadequate to describe the severity and symptoms of the claimant’s disability; (2) the case must present other indicia of an exceptional or unusual disability picture, such as marked interference with employment or frequent periods of hospitalization; and (3) the award of an extraschedular disability rating must be in the interest of justice. Thun v. Peake, 22 Vet. App. 111 (2008), aff’d, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009).

Here, the schedular rating criteria reasonably contemplate the Veteran’s left ankle symptoms, including stiffness, pain, limitation of motion, ankylosis, and limitation on mobility. For disabilities of the joints, the rating schedule specifically contemplates factors such as pain on movement; disturbance of locomotion; and interference with sitting, standing, and weight bearing. 38 C.F.R. §§ 4.45, 4.59; Mitchell v. Shinseki, 25 Vet. App. 32 (2011). Thus, the Board finds referral for consideration of an extraschedular rating is not warranted for the Veteran’s left ankle posttraumatic arthritis.

2. Entitlement to an initial 10 percent rating for left ankle scars

Diagnostic Codes 7800 to 7805 pertain to scars. 38 C.F.R. § 4.118. The Schedule of ratings for the skin were amended effective August 13, 2018. See 83 Fed. Reg. 32,592 (July 13, 2018). Prior to August 13, 2018, the Board of Veterans’ Appeals (Board) will consider the old version of the diagnostic codes only (old code); however, for the period beginning August 13, 2018 the Board will consider both the old and amended version (amended code) of the diagnostic codes and rate based on whichever is most favorable to the Veteran.

Diagnostic Code 7800 deals with scars and disfigurement of the head, face, or neck and was not revised by the recent regulatory amendments. Given the scar at issue is on the ankle, this diagnostic code is not for consideration.

Diagnostic Code 7801 provides for a 10 percent disability evaluation for a scar that is not of the head, face, or neck, that is deep and nonlinear (old code) or associated with underlying soft tissue damage (amended code), and that has an area of at least 6 square inches (39 sq. cm.). Higher ratings are available if larger areas are affected. Under the old code, a “deep scar” is defined as one associated with underlying soft tissue damage. The old and amended codes also differ regarding instructions for totalling the area affected when there is more than one qualifying scar.

Diagnostic Code 7802 provides for a 10 percent disability evaluation for a scar not of the head, face, or neck, that is superficial and nonlinear (old code) or not associated with underlying soft tissue damage (amended code) and which covers an area of at least 144 square inches (929 sq. cm.) or more. No higher ratings are available under either version of this code. Under the old code, a “superficial scar” is defined as one not associated with underlying soft tissue damage. The old and amended codes also differ regarding instructions for totalling the area affected when there is more than one qualifying scar.

Diagnostic Code 7804 provides for a 10 percent disability evaluation for one or two scars that are unstable or painful. A 20 percent disability evaluation is assigned where there are three or four scars that are unstable or painful. A 30 percent disability evaluation is assigned where there are five or more scars that are unstable or painful. An unstable scar is one where there is frequent loss of skin covering over the scar. If one or more scars are both unstable and painful 10 percent is added to the evaluation.

Under the new and amended codes, pursuant to Diagnostic Code 7805, a scar may be rated on any disabling effect(s) not considered as part of Diagnostic Codes 7801 to 7804.

In a March 2018 VA examination, the examiner noted Y shaped scar on the medial left ankle. The right side of the Y measured 7.5cm x 0.5 cm with the left side of the scar measuring 9.5 cm x 0.1 cm. The examiner found the scar was neither painful nor unstable. 

In his March 2019 NOD, the Veteran reported that the scar was painful, and contact with the scar resulted in a sharp, stabbing pain. 

Based on the evidence presented, the Board finds that an initial 10 percent evaluation is warranted for the Veteran’s left ankle scar. The Veteran reports that the scar is painful, and he is competent to do so. See Layno v. Brown, 6 Vet. App. 465 (1994). The Board acknowledges the competent and probative evidence against the claim, for example that the VA examiner indicated the scar is not painful. Nonetheless, the Board notes that simply because the scar was not painful when palpated at the examination does not mean the Veteran did not experience tenderness or pain at other times as he reports. Accordingly, the competent evidence as to whether the left ankle scar is painful is in equipoise and reasonable doubt is resolved in the Veteran’s favor. See 38 U.S.C. § 5107 (b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

A higher rating under DC 7804 requires at least three or more scars that are painful or unstable. As the Veteran does not have at least three painful scars related to his left ankle, a 20 percent rating is not warranted. Furthermore, there is no evidence that the left ankle scar is unstable. 38 C.F.R. §§ 4.7, 4.118, DC 7804. The Board has also considered whether other diagnostic codes could potentially afford the Veteran a higher rating. The competent and credible evidence does not show that these scars involve the head, face, or neck (DC 7800) or that it measures at least 12 square inches (DC 7801). Diagnostic Code 7802 does not provide for a rating higher than 10 percent. 38 C.F.R. §§ 4.7, 4.118, Diagnostic Codes 7800-7805.

Given the above, a 10 percent rating but no higher rating is granted for the scar.

3. Entitlement to an earlier effective date than November 28, 2011 for the grant of service connection for left ankle posttraumatic arthritis

In assigning effective dates, the general rule is that, except as otherwise provided, the effective date of an evaluation and award of pension, compensation or dependency and indemnity compensation based on an original claim, a claim reopened after a final disallowance, or a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110 (a); 38 C.F.R. § 3.400. The date of entitlement is the date the claimant meets the basic eligibility criteria for the benefit. The effective date for claims to reopen is the date of receipt of claim, or the date entitlement arose, whichever is later. 38 C.F.R. § 3.400(q)(2), (r).

Prior to March 24, 2015, a claim was defined as a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement to a benefit. 38 C.F.R. § 3.1 (p). Any communication or action indicating intent to apply for one or more benefits administered by VA may be considered an informal claim. 38 C.F.R. § 3.155 (a). The benefit sought must be identified, though it need not be specific. See Servello v. Derwinski, 3 Vet. App. 196, 199 (1992). Thus, the essential elements for any claim, whether formal or informal, are (1) an intent to apply for benefits, (2) an identification of the benefits sought, and (3) a communication in writing. Brokowski v. Shinseki, 23 Vet. App. 79, 84 (2009).

The Veteran contends that he is entitled to an effective date earlier November 28, 2011 for his grant of service connection for a left ankle disability. The Veteran has not set forth a specific effective date sought for the grant of service connection for a left ankle disability. However, the evidence of record does not support that an earlier effective date is warranted.

Initially, the Board must determine the date the claim to reopen was received. Reviewing the evidence, VA first received a claim for service connection for a left ankle injury in May 1998. A June 1999 rating decision denied service connection for a left ankle injury. The Veteran was notified of an unfavorable determination in June 1999 and instructed to submit a notice of disagreement (NOD) within one year of the notification. A timely NOD was not filed, and no new and material evidence was received within the appeal period; therefore, the decision became final and the May 1998 claim is not a pending claim. See 38 U.S.C. § 7105; 38 C.F.R. §§ 3.104, 20.1103.

VA next received a request to reopen a claim of service connection for “a left ankle condition” on November 28, 2011. The claim currently on appeal.

The Board has reviewed the record but has not found any formal or informal written communication that could be construed as a petition to reopen the claim of service connection for a left ankle disability prior to November 28, 2011, and after the prior final decision. Thus, the date of claim is November 28, 2011.

As to the date entitlement arose, the Veteran’s left ankle disability which clearly and unmistakably existed prior to service was aggravated by an injury in November 1997. As the later of the two dates is November 28, 2011, the date the claim was received, the effective date of November 28, 2011 currently assigned to the grant of service connection for a left ankle disability is appropriate. Thus, entitlement to an effective date prior to November 28, 2011, for the award of service connection for a left ankle disability based on the reopened claim is denied.

4. Entitlement to a 10 percent rating under 38 C.F.R. § 3.324 from November 28, 2011

When a Veteran suffers from two or more separate permanent service-connected disabilities of such character as clearly to interfere with normal employability, even though none of the disabilities may be of compensable degree under the Schedule for Rating Disabilities, the rating agency is authorized to apply a 10 percent rating, but not in combination with any other rating. 38 C.F.R. § 3.324.

The provisions of 38 C.F.R. § 3.324 are predicated on the existence solely of non-compensable service-connected disabilities. As such, once a compensable evaluation for any service-connected disability has been awarded, the applicability of 38 C.F.R. § 3.324 is rendered moot. See Butts v. Brown, 5 Vet. App. 532, 541 (1993). In light of the disability evaluations granted herein, the Veteran is currently in receipt of compensable disability evaluation effective from November 28, 2011. Therefore, the Veteran’s claim for compensation under 38 C.F.R. § 3.324 is rendered moot for the period on and after November 28, 2011. Accordingly, the claim must be denied as a matter of law. See Sabonis v. Brown, 6 Vet. App. 426 (1994). 

 

GAYLE STROMMEN

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board C. Sherman Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.